EBENEZER TUCKER and others v. The Board of CHOSEN FREEHOLDERS of the County of Burlington.

The act of 13th November, 1823, which provides "that it shall and may be lawful for the Board of Chosen Freeholders in and for the county of Burlington, *at their discretion, to build and maintain a good and sufficient bridge* over Bass river, about one quarter of a mile above the dwelling-house of Benjamin Mather, and one hundred yards below William Butler's, where the new road crosses the same leading from Tuckerton to Bridgeport, with a suitable draw therein of sufficient width for the convenient passage of vessels navigating the same,"—vested in the corporation the right to build the bridge at the place specified, whenever, in the judgment and sound discretion of the Freeholders, the right might be advantageously exercised.

The authority was not temporary, but a continuing power; it did not cease although it was not exercised by the then existing Board of Freeholders, or although the Board in 1826 might have decided that it was inexpedient to build the bridge.

This act clothed the Board of Freeholders with the same power to erect a bridge over the river at the place designated, that they have, of common right, to build bridges over other streams in the county not navigable.

*Semble.* That the Board of Freeholders have no authority to erect a bridge over a navigable stream, without an act of the Legislature expressly for that

purpose. The authority vested by such an act, is independent of the general law respecting bridges; and it is not necessary that the overseer of the highways should give notice to the director of the board of freeholders, of the necessity of a bridge at the place specified.

The Board of Freeholders having jurisdiction over the subject matter, this court cannot interfere upon the ground that their conduct has been arbitrary, or that the complainants have been denied a fair hearing. The right of supervision and correction is in the supreme court: it appertains to their general supervising jurisdiction.

The principle is universal, that where the rights of an individual are invaded, by the acts of persons clothed with authority, and who exercise that authority illegally, the persons aggrieved must seek redress by *certiorari*.

April, 1831.

Tucker et al.
v.
Freehold's of
Burlington.

THE complainants state, in their bill, that they are seized in fee simple of lands and premises, and in particular that Ebenezer Tucker is seized of a tavern house, store house, saw mill and wharf, and a large body of pine land and cedar swamp, at the head of navigation on Bass river, in the county of Burlington, where the road from Philadelphia to Tuckerton crosses said river, above where the new road from Tuckerton to Bridgeport crosses the same and the bridge in question is proposed to be erected: that large quantities of boards and lumber are annually sent down said river, and hay and merchandize unloaded at said wharf. They set forth the act of the 13th November, 1823, authorizing the board of chosen freeholders of the county of Burlington to build a bridge over Bass river, at the place where the new road from Tuckerton to Bridgeport crosses the same, (as stated in the opinion of the court,) with various provisions for the regulation and government of the bridge. They farther state, that at a meeting of the board on the 9th February, 1824, a committee was appointed to view the scite: that on the 12th May, 1826, they reported to the board that they had viewed the scite, and heard the parties, and believed it inexpedient to build the bridge at that time. That in May, 1828, a majority of the freeholders and residents in the neighbourhood remonstrated to the board against the building of the bridge. That the subject was postponed until the 13th May, 1829, when another committee was appointed to view the scite. That on the 8th February, 1830, this committee reported that they had viewed the situation, heard the parties, and united in believing that it would be expedient for the board to make an appropriation for building the bridge; the con-

April, 1831.

Tucker et al.
v.
Freehold's of
Burlington.

sideration of which report was postponed until May, 1830, when a committee of the board was appointed to build the bridge.

The complainants then state, that the act only authorized the board to build the bridge in their discretion; and insist, that the first committee having reported unfavorably, and the board having then decided not to build the bridge, the discretion of the board was expended, and no longer existed: the legislature only intending that they should pass on the subject once. They complain, that the proceedings of the board have been irregular; that upon the last hearing before the board the remonstrances had been overruled and not read. They state, that the new road, on which the bridge is to be placed, has been only opened in part; that it is but little travelled, and the bridge would be of little use to the public. That notice of the necessity of building said bridge had not been given by the overseer of the roads to the director of the board, pursuant to the general law on the subject. (*Rev. L.* 385.) They farther state, that the river at that place is three hundred feet wide, and navigable for vessels of burthen; and that the erection of the bridge would materially injure the navigation, and depress the value of the complainants' property lying on the river above that point, without benefitting the public. And they pray that the board may be compelled to receive the remonstrances, and for a subpœna and injunction against building the bridge.

On filing the bill, and serving a copy of the bill and notice of an application for injunction, an injunction was awarded.

The defendants afterwards put in their answer, in which they admit the law and the proceedings of the board of freeholders; but insist that the freeholders violated no principle of law or equity in rejecting the remonstrances, as they were not verified, and went to falsify the report of a committee of the board, who long afterward had viewed the scite, heard the parties, and believed the period had arrived when it was expedient to build the bridge. The defendants further allege, that the board never fully acted under the law until the period when they ordered the bridge to be built: that the first report was inconclusive, and of no force unless acted on by the board: that the board never decided not to build the bridge; but that after the first report of the committee,

no further proceedings were had in relation to the building of the bridge, until the second application to the board.   And they sub- mit, whether by these proceedings the discretion vested by the act in the board, was expended.   The defendants farther state, that one third of the road  intended to be connected with said bridge is opened, and in daily use, and that they believe the whole will be opened as soon as the bridge is built ; and they insist that no- tice of the necessity of said bridge was not required to be given by the overseer of the  highways to the director of the board, to enable the board to act under the law enabling them to build the bridge : that the act vested a special authority in the board, in- dependent of the general law respecting bridges.   They also insist that the bridge is a public improvement, and that this court has no jurisdiction over the proceedings of the board, in the exercise of the discretionary power vested in them by the act.   They deny that the erection of the bridge will materially obstruct the navi- gation of the river, or injure the value of property lying above the bridge, but on the contrary say that it will enhance its value.

The answer was put in under the corporate seal of the board, with the usual affidavit by the director of the board annexed.

After the coming in of the answer, upon notice given, a mo- tion was made to dissolve the injunction : and argued by

*G. D. Wall*, for the complainants ;

*B. R. Brown* and *G. Wood*, for the defendants.

Cases cited : 1 *John. C. R.* 18 ; 2 *John. C. R.* 371.

THE CHANCELLOR.   The grounds on which it was deemed advisable to allow an injunction in this case, were these :—1. Be- cause it was represented that Bass river, over which the board of freeholders were about to erect a bridge, was a navigable stream, and used by divers individuals for the purposes of navigation ; and that great and irreparable injury would be done to private pro- perty by the erection of the bridge ; and,

2. Because it was represented, and so appeared to the court, that the act of the legislature of 1823, under which the board

April, 1831.

Tucker et al.
v.
Freehold's of
Burlington.

claimed authority to erect the bridge, was no longer operative; that it was intended to be, and actually was, temporary in its nature, and did not invest the board with an authority which might be exercised at their discretion, at any period of time, no matter how remote.

As to the first ground, it is sufficiently met by the answer of the defendants; from which it appears, that even if the stream at the place where it is sought to locate the bridge, is to be considered as a navigable stream, yet the injury that may result to private property is not of a character to require the interference of this court.

In looking into the second ground, in connection with the facts disclosed in the defendants' answer, I am perfectly satisfied the injunction cannot be sustained.

By an act of the legislature, passed the 13th November, 1823, it was enacted, substantially, as follows :—That it shall and may be lawful for the board of chosen freeholders in and for the county of Burlington, at their discretion, to build and maintain a good and sufficient bridge over Bass river, about one quarter of a mile above the dwelling house of Benjamin Mather, and about one hundred yards below William Butler's house, where the new laid road crosses the same, leading from Tuckerton to Bridgeport, with a suitable draw therein, of sufficient width for the convenient passage of vessels navigating the same.

This law vested in the corporation the right to build the bridge. The place where was particularly specified; but the time when the right might advantageously be exercised, was left to the judgment and sound discretion of the freeholders, the immediate representatives of the county. The authority was not temporary, such as to require its exercise by the then existing board of freeholders, and if not exercised by them to cease. Nor is it to be considered as ceasing, although the board might have decided in 1826, that it was inexpedient to build a bridge at the place specified. The power was a continuing power. By this special act, the board of freeholders were clothed with the same kind of power, to place a bridge over this river, at the place designated in the law, that they have constitutionally and of common right to erect bridges over other streams in the county, not navigable. The

April, 1831.

Tucker et al.
v.
Freehold's of
Burlington.

power may be exercised, or it may be postponed in its application, or withheld altogether. The legislature did not intend, in any wise, to prescribe limits to the discretion of the board of freeholders. They meant simply to grant to them a power, which before they did not possesss, and to leave them to exercise it when, and in such mode, as should be deemed most advantageous for the interests of the public.

It appears moreover, by the answer of the defendants, that the board never made a final decision on the application to build the bridge, until May, 1830, when they decided favourably : that although a committee of the board had formerly reported unfavourably to the building of the bridge, that report had not been finally acted on by the board. This being the case, there is no one principle on which it can be seriously contended, that the power of the board was at an end.

It is urged, however, that the board have not exercised their powers in a lawful way : that their conduct has been arbitrary towards the complainants, and that the complainants have been denied a fair hearing on the merits of the case.

If the board have power to act in the premises; if they have jurisdiction over the subject matter, this court can take no cognizance of the complaints contained in the bill. The right of supervision and correction is in another tribunal. In England, it belongs to the king's bench, and in this state to the supreme court. The principle is universal, that wherever the rights of individuals are invaded by the acts of persons clothed with authority to act, and who exercise that authority illegally, the persons aggrieved must seek redress by certiorari. It appertains to the general supervisory jurisdiction of the supreme court, exercising in that behalf the powers of the king's bench, to correct abuses of that character. The jurisdiction is not a doubtful one, nor is the exercise of power under it novel, either in England or in our own state. It is, then, to the supreme court that the complainants must resort to have their grievances redressed, and not to the chancery : 1 *Salk.* 145 ; 1 *Ld. Ray,* 469 ; 4 *John. C. R.* 352.

Let the injunction be dissolved.