FIREMEN'S INSURANCE COMPANY & a. v. ARMAND J. HOULE & a.

*Frederick W. Branch* (by brief and orally), for the plaintiffs.

*Chretien & Craig* (*Mr. Chretien* orally), for the defendants.

JOHNSTON, C. J.   There was evidence to support the general findings of the Court that the north building was not physically a total loss and that it had not lost its identity as a building, and the following specific findings:

"With the exception of the south wall, the walls of the first and second floors can be advantageously and safely used in place in restoring the north building, or the whole building, to the condition in which it was prior to the fire.

"The floor timbers and partitions below the fourth floor were un-

damaged by fire, except for slight damage near the openings in the fire wall, and could be used in place in reconstructing the building, and would be so used by a reasonably prudent man, uninsured, desirous of restoring the north building or the whole building to the condition in which it was prior to the fire."

However, the Court is in error in ruling that the superintendent of buildings does not have discretion to refrain from issuing a permit for the repair of the north building. Section 596 of the code reads as follows: "Superintendent Acts on Matters Not in Code. All matters and questions relating to buildings or building operations not covered or provided for in this code shall be decided by and left to the discretion of the superintendent of buildings and his decision shall be as final and binding as if contained in this code."

Under our decisions this section is not unconstitutional. "The further position is taken that the act violates the Constitution in delegating primary legislative power. It is urged that 'there is no standard established but only a general objective described,' and that 'this whole subject' is transferred to the executive department of the state government. In *Ferretti* v. *Jackson*, 88 N. H. 296, a test was announced that there must be a declared policy and a prescribed standard laid down by the Legislature. Beyond that, regulatory and discretionary authority may be delegated to those assigned to administer the law. While the Legislature may exercise its own discretion if it sees fit and provide at its will for the details of administrative action, yet also it may vest the executive board directed to carry the law into effect with concurrent discretionary functions. So far as they are in any sense legislative, they are auxiliary to the predominant feature of administrative authority." *Conway* v. *Water Resources Board*, 89 N. H. 346, 351, 352. See also, *Meredith* v. *State*, 94 N. H. 123, 131, 132.

The object of the code is stated to be to provide for "the safe use" of buildings in the city of Manchester. The superintendent of buildings is charged with the enforcement of the provisions of the code, and he may examine buildings in relation to their proper ventilation, sanitation and safety and make such orders as to him seem proper to secure public and private safety. In five hundred and ninety-eight sections covering some three hundred and thirty-two printed pages the code specifies by what means this purpose of safety shall be attained. Finally, in section 596 the superintendent of buildings is given discretionary power to decide matters and questions relating to buildings and building operations not provided for in the code. It

would have been humanly impossible to have covered all contingencies by express language. The delegation of this discretionary power over such a residue of situations is proper.

It is true that the superintendent was mistaken in his belief that the following provisions of the building code prevented him from issuing a permit for the repair of this building:

"Title XVI. *Fireproof Construction.* Sect. 307. When Required.

"Fireproof construction shall be required throughout in:

"(c) All buildings hereafter erected or altered to be used as hotels, apartment, tenement or lodging houses, dormitories, bachelor apartments, or similar occupancies, over three stories or 45 feet in height." This section relates to the erection of new buildings and the planned alteration of existing buildings and not to the repair of damage caused by fire. This last mentioned subject is treated separately in section 95 of the code, which deals with damage by fire caused to frame buildings. It is as follows:

"Frame Buildings Damaged. Every frame building now existing within the fire limits, which may hereafter be damaged to an amount not greater than fifty per cent of the cost of a similar new building, exclusive of the valuation of the foundation thereof, at the time of such damage may be repaired or rebuilt; but if such damage shall amount to more than fifty per cent as aforesaid then such building shall not be repaired or rebuilt but shall be torn down and removed." The Rimmon block was of ordinary construction defined in section 272. There is no requirement that a building of ordinary construction damaged by fire be repaired so that it shall consist of fireproof construction.

The case is accordingly remanded to the Superior Court to ascertain what the superintendent decides in his discretion as to whether the defendants may repair the damage to the north building without using fireproof construction. There is no finding that the building was damaged to an amount not greater than fifty percent of the cost of a similar new building, exclusive of the valuation of the foundation thereof. If the damage was so limited, then the superintendent would be compelled to permit repairs since it would be arbitrary of him to demand more than the code requires in the case of frame buildings. See *State* v. *Langley,* 92 N. H. 136. In exercising his discretion, the superintendent should have in mind the purpose of the code on the one hand and on the other the burden to the owners and their indemnitors of furnishing fireproof construction.

If the superintendent decides that the north building may not be

repaired, then it is a total constructive loss, and the defendants are entitled to the face value of their policies. 7 Couch, Cyc. of Insurance Law, 6029; 49 A. L. R. 817. In the event that he permits repairs, certain other questions relating to damages should be determined.

The Court correctly ruled that the insurers were not liable for any reduction in value of the north building arising from the destruction of the south building. It found without exception being taken that "on the question of actual loss the parties tried the case on the theory that replacement cost was the correct measure of damages." The condition of the south building as affecting the use or lack of use of the north building is irrelevant in determining such cost. It has already been stated that there was evidence to support the finding of the Court that the north building was not a total loss physically.

The Court found that the elevator was damaged to the extent of $2,500. This was the evidence of the plaintiffs. It cannot be said that this was error in view of the fact that the car was still in the original wrappings and with the doors incurred unspecified water damage only and could be used when the building was rebuilt. The fact that the seller refused to take back any of the equipment was not conclusive. The car itself was not a standard size.

The general rule is that interest runs from the time the loss has become due and payable under the terms of the policy. 46 C. J. S. 697. "[A] rule well supported by authority is to the effect that interest commences to run from the time when a loss is made payable by the terms of the policy." 6 Appleman, Insurance Law and Practice 479. Swamscot Machine Co. v. Partridge, 25 N. H. 369, 380; Nevins v. Insurance Company, 25 N. H. 22; 154 A. L. R. 1356, 1369. The New Hampshire Standard Form of Policy contains the following clause: "In case of any loss or damage, the Company, within sixty days after the insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, or replace the property with other of the same kind and goodness . . . " In Levy v. Insurance Company, 75 N. H. 551, and Gleason v. Insurance Co., 73 N. H. 583, it was held that the requirement of the sworn statement referred to in this clause was in conflict with the statutory law and that the only requirement was the filing of a notice of loss. The plaintiffs make no claim that they did not have knowledge of the fire on the day of its occurrence, November 2, 1946. The exception to the ruling that "interest begins to run from January 2, 1947, sixty days after the date of loss," is accordingly overruled.

The fire or dvision wall between the two buildings was so damaged

that it will have to be completely replaced. The owners of course cannot recover twice for its damage or destruction. Since they owned both halves of the block, it is unnecessary to determine what the interest would have been in the dividing wall if the parts had been differently owned. The defendants had the entire right, title and interest. The question, is what did each set of policies cover? The policies issued by the plaintiffs provided: "If there shall be any OTHER INSURANCE on the property insured, valid or invalid, whether prior or subsequent, the insured shall recover on this Policy to no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon." *Central States Fire Insurance Company* v. *Jenkins*, 220 Ky. 566, is the only case that has been found that bears on this point. In a similar factual situation, it was held that a party wall was included in both buildings that were commonly owned and was covered by the separate policies on the two buildings. See 7 Couch, Cyc. of Insurance Law 6182, 6183. These authorities are followed in the absence of other cases. The defendants are entitled to recover from these plaintiffs damages on a pro rata basis of apportionment in the proportion which insurance written by these plaintiffs bears to the total insurance on both halves of the block.

An item of the cost of jacking up the building was allowed over the exception of the plaintiff. The raising of the building was made necessary because of the settling of the piers due to water seepage that was occasioned by the great quantity of water used in extinguishing the fire. The policies provided: "Property not Covered: This policy does not cover cost of excavations; brick, stone or concrete foundations, piers or other supports which are below the under-surface of the lowest floor of basement or basements, or where there is no basement, which are below the surface of the ground; underground flues, pipes or drains." While the damage to the piers was uninsured, such damage is not included in the award of the Court. The damage to the buildings caused by settling was properly compensated for although one of the links in the chain of causation was the uninsured damage to the piers. "In other words, it has been held that recovery may be allowed . . . where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk." 5 Appelman, Insurance Law and Practice 220.

*New trial.*

All concurred.