ELSIE MONDZELEWSKI V. FIDELITY AND GUARANTY INSURANCE CORPORATION, a corporation of the State of Maryland, COMMERCIAL UNION ASSURANCE COMPANY LIMITED, a corporation of the State of New York, NEW YORK FIRE INSURANCE COMPANY, a corporation of the State of New York, and OHIO FARMERS INSURANCE COMPANY, a corporation of the State of Ohio.

442

(*May* 28, 1954.)

CAREY, J., sitting.

*Charles L. Paruszewski* for plaintiff.

*Albert L. Simon* and *Stephen E. Hamilton, Jr.*, for defendants.

Superior Court for New Castle County, No. 42, Civil Action, 1952.

CAREY, J.:

A rather extended statement of the facts is necessary to an understanding of the legal issues involved.

The fire insurance policies issued by defendants upon plaintiff's building at 600-602 Christiana Street in Wilmington provided coverage in the total amount of $7,000. They all contained endorsements whereby it was agreed that the value of the

building was $8,500. Each policy contained the following clauses:

"(Insurance Company) does insure Elsie Mondzelewski and legal representatives to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair * * *."

"In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss."

On March 23d, 1951, the building was damaged by fire, which apparently gutted the interior, damaged the roof and parts of the exterior. It appears that the foundation and outer shell of the building remained standing and only partly damaged. A few days later the City Building Inspector inspected the premises, determined that they were structurally unsafe and found that the cost of reconstruction was in excess of fifty per cent of the assessed value of the building. Upon these findings, he ordered the plaintiff to demolish what remained of the structure. Notwithstanding his order, plaintiff later applied for a permit to restore or repair the building to its original condition,

but this permit was refused because of the ordinances hereafter mentioned. At the time of the fire, the building was assessed at $600 on the City Assessment list.

In September 1951, acting under the appraisal provision of the policies, defendants appointed an appraiser and requested plaintiff to do likewise. She complied with this request. Apparently the two persons so selected could not agree on the amount of the loss and on December 31, 1951 they chose an umpire. On the same day, defendants' appraiser and the umpire fixed the actual value of the structure before the fire at $8,225.90, and the fire loss at $1,550. Plaintiff's appraiser did not sign the award. Plaintiff refused to abide by it.

On January 21, 1952, the Building Inspector again notified plaintiff to tear down the remains of the building. She did not obey this order and therefore was arrested on March 3, 1952 under a warrant issued out of the Municipal Court of Wilmington. Sometime subsequent to her arrest, she had the structure demolished. Prior to doing so, she caused an appraisal to be made by two real estate brokers, who respectively valued the building at $4,000 and $4,100 as it stood before the fire, and agreed that it had no value in its condition after the fire, with no salvage value.

At all pertinent times, there were in effect certain ordinances of the City of Wilmington dealing with building regulations. These ordinances confer rather broad powers upon the Building Inspector concerning their enforcement. Section 45 of Chapter 25 *Revised Code of Wilmington* 1942 reads as follows:

"Unsafe Buildings; Removal or Repair of Buildings:—a. Any building which shall be abandoned or left unoccupied and become dilapidated, creating a fire menace by reason of being a resort for irresponsible persons or trespassers, or any building or structure or part thereof which may be or shall at any time hereafter become dangerous or unsafe, shall, unless made safe and secure, be taken down and removed.

b. A building or structure or part thereof declared dilapidated or structurally unsafe, or lacking safeguards against fire, by duly constituted authority must be restored to safe condition by the owner; provided that if the damage or cost of reconstruction or restoration is in excess of fifty per cent of the assessed value of the building or structure exclusive of foundations, such building, or structure, if reconstructed or restored, shall be made to conform, with respect to materials and type of construction, to the requirements for buildings and structures hereafter erected; but no change of use or occupancy shall be compelled by reason of such reconstruction or restoration."

Section 46 a of the same Chapter reads as follows:

"Notice of Unsafe Building:—a. Upon receipt of information that a building or structure is unsafe, the Building Inspector shall make or cause to be made an inspection; and if it is found that an unsafe condition exists, he shall serve or cause to be served on the owner, or some one of the owners, executors, administrators, agents, lessees and other persons who may have a vested or contingent interest in the same, a written notice containing a description of the building or structure deemed unsafe, a statement of the particulars in which the building or structure is unsafe, and an order requiring the same to be made safe and secure or removed, as may be deemed necessary by him".

Section 54 of that Chapter makes it a misdemeanor to violate the ordinance, punishable by fine.

It is conceded that the premises in question are located within the first fire district of the City and that, under Section 71a of Chapter 25, no building of unprotected metal construction may be erected in that district, nor may any building of frame construction be erected therein.

Although conceding their liability to the extent of $1,550, defendants deny any greater responsibility under their policies for three reasons. First, they argue that the plaintiff is bound by

the award made by the appraiser and umpire in accordance with the policy provisions. Second, they contend that the building was actually only partially damaged by fire, that it is only because of the City ordinances that the insured suffered a total loss, and that any loss caused by the operation of the ordinances is excepted from the policy coverage. Third, they argue that Section 45b of Chapter 25 is unconstitutional in the respect that it forbids the repair of a frame building with non-fireproof materials where the damage to the building or cost of reconstruction is more than 50 per cent of its assessed value.

The plaintiff takes issue with all these contentions. She argues that restoration of the building with the original type of materials was forbidden; that because of the fire, plus the operation of the ordinances she has sustained a total loss; that because of the "valued policy" statute, Volume 45 *Laws of Delaware*, Chapter 81, the policy provisions relied on by defendants are of no force and effect in this case; and that the ordinance is constitutional.

There would seem to be no doubt that the award of the appraiser and umpire would be binding upon the plaintiff if this be a case of partial loss. There is nothing in the record to suggest any fraud or misrepresentation on the part of the defendants or the arbitrators or to indicate that submission of the question to arbitration was anything other than a voluntary act upon plaintiff's part. Here counsel does not even suggest any reason why the award should not be binding upon her, if the loss is eventually found to have been partial.

With respect to both the award and the policy provision attempting to limit liability to the actual cost of replacement with similar materials, the real question for determination is the effect of the valued policy statute. It reads in part as follows:

"Whenever any policy of insurance shall be issued to insure any real property in this State against loss by fire, * * * and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of

the insurance stated in such policy * * * shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages * * *; and every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the real property insured is the sum of $————;' and this estimate shall be binding on both parties as to value; provided, however, that nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the loss by replacing the property destroyed. * * *" Vol. 45 *Laws of Del.* Ch. 81.

The defendants' reasoning is that, in this case, the statute has no application because, say they, part of the insured's loss was due to a cause not covered by the policies. The argument is that the insurers have expressly limited their coverage in such way as to exclude any loss resulting from municipal action or ordinance and that the plaintiff was a self-insurer as to that part of her loss. *Hewins v. London Assurance Corporation*, 184 *Mass.* 177, 68 *N. E.* 62, is cited in support of this contention. A reading of that case, however, discloses that the Court did not consider the effect of a valued policy statute in this type of situation. Indeed, nothing in the opinion suggests that such a statute was in effect in Massachusetts at that time.

On the other hand, there are a number of authorities which take a different view from that set forth in the *Hewins* case, *supra*. *Rutherford v. Royal Insurance Company*, 4 *Cir.*, 12 *F.* 2d 880, 49 *A. L. R.* 814, apparently did not involve a valued policy law, the Court holding that the exception in the policy applied only to a partial loss even though the total loss arose only through application of the theory that a municipal ordinance forbidding repair converts a partial loss into a total loss. This holding was followed in *City of New York Fire Insurance Company v. Chapman*, 7 *Cir.*, 76 *F.* 2d 76, 77, wherein the Court pointed out that "the use of the words 'repair' and 'reconstruction' rather than 'build' or 'construct' in this section of the policy are persuasive of the fact that it was not intended to apply

where the building has been totally destroyed." In *Scanlan v. Home Insurance Company, Tex. Civ. App.*, 79 *S. W.* 2d 186, under a slightly differently worded exception, the Court held that the clause had reference to partial losses only, but that even if the intent was to render partial a loss which otherwise would be total, such a stipulation would be in contravention of the valued policy statute and therefore void. In *Palatine Insurance Company v. Nunn*, 99 *Miss.* 493, 55 *So.* 44, the Court held that a somewhat similar clause was in conflict with the valued policy law of Mississippi. The same holding was made in *Dinneen v. American Insurance Co.*, 98 *Neb.* 97, 152 *N. W.* 307, *L. R. A.* 1915E, 618.

■■ I am of the opinion that the principles laid down in the cases last mentioned represent the rules which should be followed here. Those authorities demonstrate that the proper approach in a case of this kind is first to determine whether the insured has sustained a total loss proximately resulting from the fire; if the answer is in the affirmative, then the valued policy statute controls, regardless of the terms of the policy itself; if the answer is in the negative, the valued policy statute has no application. *Cf. American Insurance Company v. Iaconi*, 8 *Terry* 167, 89 *A.* 2d 141. If the condemnation and demolition of this plaintiff's building were made necessary by the fire in 1951, she sustained a total loss because of the fire. 29 *Am. Jur.* 888; 45 *C. J. S.*, Insurance, § 913, page 1008. In that event, defendants would be liable to her for the full amount of insurance, as both the exception in the insurance clause and the provision concerning arbitration would be inapplicable to this case. See authorities above cited and 45 *C. J. S.* Insurance, § 1111, page 1354.

■ I turn now to the constitutional question raised by the defendants. By stipulation it appears that the condemnation was ordered solely because of the determination that the cost of reconstruction was in excess of fifty per cent of its assessed value. The question is, therefore, raised by the defendants as to whether or not the assessed value is a proper and reasonable criterion upon which to base the drastic action of condemning a building

and ordering its demolition. Plaintiff's counsel does not rely upon any theory of estoppel but argues, first, that the constitutional point cannot be raised in this proceeding, and second, that the proviso is constitutional in any event. Most ordinances found in the reported cases contain a different criterion such as "fair value", "market value", "value of a similar new building" or simply "value". I have found only two reported cases in which the term "assessed value" was used, towit, *Navin v. Early, Sup.,* 56 *N. Y. S.* 2d 346, where is was upheld, and *Betty v. City of Sidney,* 79 *Mont.* 314, 257 *P.* 1007, 56 *A. L. R.* 872, in which it was held bad. If the question were open for decision in this case, I would entertain serious doubt of the validity of the questioned clause.

In *Lewes Sand Company v. Graves,* 1 *Terry* 189, 8 *A.* 2d 21, the Supreme Court drew a distinction between the lack of jurisdiction of municipal authorities to pass an ordinance on the one hand, and on the other hand, the admitted power to pass the ordinance, but an improper manner of exercising the right. It was held that the latter type of ordinance cannot be collaterally attacked. The right of the governing authorities of Wilmington to adopt proper building regulations is beyond question. It can hardly be doubted that they have full power to enact the type of ordinance which constitutes Chapter 25 of the *Code* and which is designed, *inter alia,* to reduce fire hazards. They likewise have authority to delegate, within proper bounds, administrative duties to a Building Inspector. The question raised by defendants in this case cannot be determined in this collateral proceeding.

It must be conceded that this ruling is difficult, if not impossible, to reconcile with certain cases from other states, such as *Zalk & St. Joseph's Realty Co. v. Stuyvesant Insurance Company,* 191 *Minn.* 60, 253 *N. W.* 8; *Lux v. Milwaukee Mechanics Insurance Company,* 322 *Mo.* 342, 15 *S. W.* 2d 343; *Firemen's Insurance Company v. Houle,* 96 *N. H.* 30, 69 *A.* 2d 696, 13 *A. L. R.* 2d 612. They are all instances wherein insurance companies attacked the constitutionality of ordinances in actions on the polices and the Courts considered and passed upon the con-

stitutional question. In none of them, however, is this subject of collateral attack even mentioned. Moreover, only in the *Lux* case was the ordinance declared unconstitutional, and that holding was based upon the fact that the Council had attempted to confer upon an administrative officer arbitrary discretion without fixing any definite standard or rule for his guidance—a difficulty not presented here. In any event, this Court may not ignore decisions of our own Supreme Court, and no satisfactory reason has been pointed out why the *Lewes Sand Company* case is not applicable. I must, therefore, decline to rule upon the constitutional question.

Defendants' motion must be denied.