115 A.2d 697 (1955)
FIDELITY AND GUARANTY INSURANCE CORPORATION, a corporation of the State of Maryland,
Commercial Union Assurance Company, Limited, a corporation of the State of New York,
New York Fire Insurance Company, a corporation of the State of New York, and
Ohio Farmers Insurance Company, a corporation of the State of Ohio, Appellants,
v.
Elsle MONDZELEWSKI, Appellee.
Supreme Court of Delaware.
July 7, 1955.
*698 Stephen E. Hamilton, Jr., Wilmington (Albert L. Simon, Wilmington, with him on the brief), for appellants.
Charles L. Paruszewski, Wilmington, for appellee.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
SOUTHERLAND, Chief Justice.
Plaintiff brought suit upon policies of fire insurance totalling $7,000 in amount and covering two adjoining frame buildings in the first fire district of the City of Wilmington. She sought to recover as for a total loss. Her motion for summary judgment was granted and the companies appeal, urging that the loss was partial only, and that judgment should have been entered for only $1,550, the amount of the fire damage found by appraisal proceedings under the policy.
Plaintiff's claim of total loss is based upon the fact that after the fire the buildings were condemned by the City Building Inspector and she was forced to raze them. The action of the Building Inspector was grounded upon ordinances of the City of Wilmington regulating the repair and reconstruction of wooden buildings within the first fire district. Its provisions will be considered hereafter. At the moment we merely note that the ordinance, if valid and effective, required the demolition of plaintiff's buildings.
Upon the theory that the total destruction of the buildings was, by operation of law, the direct result of the fire, plaintiff claims the full amount of the insurance under the provisions of the Delaware Valued Policy Law. 18 Del.C. § 1102.
In the course of the proceedings below defendants moved for summary judgment. They contended (1) that the loss by fire was partial and was not converted into a total loss by reason of the condemnation; and (2) that in any event the plaintiff was not compelled to demolish the buildings because the ordinance under which they had been condemned was unconstitutional. The motion was denied. The trial court held (1) that because of the condemnation the loss was total; and (2) that the companies could not assert the invalidity of the ordinance, since this assertion involved a collateral attack upon it. See Del.Super., 105 A.2d 787. The trial court's opinion left no issue of fact to be determined, and (we are informed) the court suggested that plaintiff file a motion for summary judgment. This motion was filed, and the court entered judgment for plaintiff for the full amount claimed. The companies appeal.
The companies here renew these contentions. In support of the first contention it is claimed that the risk assumed was that of fire damage solely; loss resulting from the operation of the building laws, it is said, is expressly excluded by the policy.
*699 The policy clause relating to the point reads:
"[The company] does insure Elsie Mondzelewski and legal representatives to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair * * *."
This clause applies, of course, to partial losses. Admittedly, if the loss by fire is total, the valued property statute applies and all inquiry as to the amount of the loss and damage is foreclosed. That statute reads in part as follows:
"Whenever any policy of insurance shall be issued to insure any real property in this State against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy * * * shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages * * *." 18 Del.C. § 1102.
The question therefore is whether the total destruction by compulsion of law of a building partially damaged by fire is a total loss by fire within the intent of the statute. In considering this question, the constitutionality of the ordinance is assumed.
The general rule is that if repair or reconstruction of a building damaged by fire is prohibited by the municipal authorities acting under proper authority of law, recovery may be had as for a total loss. 6 Appleman, Insurance Law, § 3822; 6 Cooley, Briefs on Insurance, 2d Ed. § 5032; annotation in 49 A.L.R. 817. This is merely a logical extension of the rule of constructive total loss. Under this rule it has been held that a fire loss is total if the building is so damaged that no substantial remnant remains that a prudent uninsured person would use on rebuilding. See annotation in 39 L.R.A.,N.S., 1182. The same result logically follows if the insured is prevented by law from making repairs. In the first case the fire loss is total in fact; in the second case it is total in law.
If, however, there is a policy provision, as in this case, excluding from the coverage "any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repairs", an additional question is presented. Does this language limit the extent of the loss to actual fire damage, and exclude a claim for a total loss arising from compulsory condemnation? In jurisdictions where no valued policy law exists there is a conflict of authority on this point. See, for example, Rutherford v. Royal Insurance Co., Ltd., 4 Cir., 12 F.2d 880, 49 A.L.R. 814, and Hewins v. London Assurance Co., 184 Mass. 177, 68 N.E. 62. In the Rutherford case it was held that the policy clause refers to partial losses only and not to total losses, and the question whether the loss was in fact total, by reason of the legal impossibility of repair, is still open. In the Hewins case it was held that by the policy provision the insured has contracted away any right to claim a total loss resulting from the enforcement of the building laws.
In cases decided under the valued policy statutes, however, the courts have uniformly held that upon a showing that the demolition was required by law the insured may recover as for a total loss. Dinneen v. American Insurance Co., etc., 98 Neb. 97, 152 N.W. 307, L.R.A.1915E, 618; Palatine Insurance Co., Limited v. Nunn, 99 Miss. 493, 55 So. 44; Scanlan v. Home Insurance Co., Tex.Civ.App., 79 S.W.2d 186; Hart v. North British & Mercantile Ins. Co., 182 La. 551, 162 So. 177. The policy provision contracting against liability for enforced demolition is held to be overridden by the statute if the loss is total by reason of such demolition.
*700 The companies insist that these cases are wrongly decided and should not be followed. Valued policy statutes are said to be concerned with valuation, not with the character of the risk assumed. The policy provision is said to be a limitation of the risk assumed, and as such a lawful subject of contract. A comment in 34 Col.L.Rev. 1149-1150 is cited.
We do not agree with this reasoning. The valued policy statute is concerned not only with valuation but also with the measure of the insurer's liability in cases of total loss. What constitutes a total loss is not defined in the statute. But when the legislature used the phrase "totally destroyed" it certainly employed it in the light of accepted principles of insurance, which permit recovery for a constructive total loss. If the loss is in law or in fact total, the statute applies and the insurer must pay the face amount of the policy. A policy provision that prevents the insured from showing that the loss is in law or in fact total runs directly afoul of the clear intent of the statute.
The companies concede that the fire was the proximate cause of the demolition, but deny that a total loss so caused is within the scope of the statutory language referring to total destruction by fire. This argument seems to deny that which has been conceded  the rule of proximate cause applicable to fire damage. The insurer is liable not only for fire damage but for damage of a different kind necessarily resulting from the fire, e. g., damage by water used in extinguishing the fire. 4 Joyce, Insurance, § 2824.
It is suggested that in 1889, when the valued policy statute was enacted, there was no fire district in the City of Wilmington and no ordinances of the kind here involved, and that the legislature could not have contemplated as a total loss compulsory demolition of a fire-damaged building. Whether municipal condemnation of fire-damaged buildings existed in the City of Wilmington when the statute was passed is of no consequence. The language of the statute is broad enough to include any case of total destruction directly resulting from a fire, whether the destruction be in fact or in law. It is an elementary rule of statutory construction that legislative enactments couched in general terms broad enough to include conditions that the future may bring forth apply to the new conditions if they come within the general purview of the statute. 50 Am.Jur., Statutes, § 237.
The suggestion that the enforced demolition of the buildings was not within the contemplation of the parties because they had contracted to exclude it from coverage is merely a reiteration of an argument already dealt with. They could not contract in contravention of the statute.
The companies build an argument upon the fact that the Insurance Commissioner has approved (apparently by inaction) a form providing for demolition coverage occasioned by building laws upon payment of an extra premium. We are satisfied that this approval has no force sufficient to overcome the principles of law above set forth.
Upon the companies' first contention we are in accord with the holding of the Superior Court.
The companies' second contention is that the building ordinance requiring condemnation of a building damaged by fire to the extent of fifty per cent of its assessed value is unconstitutional.
The facts pertinent to this contention are as follows:
The fire occurred March 23, 1951. The interior was gutted and the roof and parts of the exterior damaged. After the fire the Building Inspector of the City made an inspection of the buildings to determine their condition. This action was taken under the provisions of Section 45 of Chapter 25 of the Revised Code of the City of Wilmington, which provides in part as follows:
"Unsafe Buildings; Removal or Repair of Buildings:  a. Any building which shall be abandoned or left unoccupied and become dilapidated, creating *701 a fire menace by reason of being a resort for irresponsible persons or trespassers, or any building or structure or part thereof which may be or shall at any time hereafter become dangerous or unsafe, shall, unless made safe and secure, be taken down and removed.
"b. A building or structure or part thereof declared dilapidated or structurally unsafe, or lacking safeguards against fire, by duly constituted authority must be restored to safe condition by the owner; provided that if the damage or cost of reconstruction or restoration is in excess of fifty per cent. of the assessed value of the building or structure exclusive of foundations, such building, or structure, if reconstructed or restored, shall be made to conform, with respect to materials and type of construction, to the requirements for buildings and structures hereafter erected; but no change of use or occupancy shall be compelled by reason of such reconstruction or restoration."
Under sections 69 and 71 of the same Chapter any building thereafter erected within the first fire district must be of fireproof or semi-fireproof construction. Frame construction is prohibited.
The findings of the Building Inspector are set forth in an affidavit later filed in the case below. They are in substance as follows:
* * * * * *
"4. That the fire damages to said premises were so extensive that the cost of reconstruction or restoration of said premises is in excess of fifty percent of the assessed value of the buildings.
"5. That the said buildings are in a very delapidated condition and structurally unsafe due to lack of repairs and maintenance, and, consequently are a serious fire hazard and as now being maintained created a public hazard, and as such are in violation of the 1936 Building Code of the City of Wilmington, Delaware, being Section No. 107, Paragraph (b).
* * * * * *
"7. That on or about April 3, A.D. 1951, said buildings had been condemned by the Department of Building Inspection of the City of Wilmington, Delaware, and that the owner, Elsie Mondzelewski, was ordered to have said buildings demolished."
The order of condemnation appears to be based directly on the finding that the cost of restoration or reconstruction (i.e., the amount of the damage), exceeded fifty percent of the assessed value, and on the prohibition against restoration to its former condition of a wooden building so damaged. Accordingly, plaintiff's application for a permit to repair was refused, and she was ordered to demolish the buildings. Plaintiff at first resisted, but some months later, upon being arrested for violation of the order, complied with it and razed the structures.
In September, 1951, appraisers were appointed under the applicable policy provisions. On December 31, 1951, having failed to agree, they chose an umpire. On the same day the umpire and the companies' appraiser reported that the value of the buildings before the fire was $8,255.90 and that the loss was $1,550. The assessed value of the buildings was $600.
Plaintiff refused to accept the award and filed suit.
There is no evidence on the record that the companies were notified of the condemnation proceedings.
The companies' contention is that the ordinance is unconstitutional on its face because it adopts a standard of value  assessed value  which bears no necessary relation to real value and hence is arbitrary and unreasonable.
The first question before us is whether the companies may be permitted to attack the validity of the ordinance in this proceeding. The court below held that they could not do so, relying upon Lewes Sand *702 Co. v. Graves, 40 Del. 189, 8 A.2d 21, 22. The facts of that case were these:
By legislative act the town of Lewes was given jurisdiction over certain state lands adjacent to the town, and authorized to lease the lands "to persons who will improve or agree to improve the same". The town commissioners by ordinance and formal instrument of writing leased certain of these lands to Lewes Sand Company, and later leased certain other lands to Graves. The Sand Company encroached on Graves' land, and Graves brought an action of trespass. The Sand Company asserted that the lease was ultra vires and void, apparently for the reason that Graves had made no improvements and that there was no showing of any agreement to do so. It was held that the ordinance was not subject to collateral attack. The court said:
"* * * We do not think the circumstances of this case bring the matter within any exception to the general rule that a municipal ordinance is not subject to collateral attack. Public policy forbids that legislative acts or municipal ordinances should be attacked collaterally. 2 McQuillen Mun.Corp., 2d Ed., Sec. 844, p. 869; Sawyer v. Robison, 114 Tex. 437, 268 S.W. 151; Chicago Tel. Co. v. Northwestern Tel. Co., 199 Ill. 324, 65 N.E. 329, at page 335.
"In Treasurer of City of Camden v. Mulford, 26 N.J.L. 49, the court drew the clear distinction between the lack of jurisdiction of municipal authorities to pass an ordinance on the one hand and on the other hand the admitted power to pass the ordinance, but the improper manner of exercising the right. In the latter case it was held that the ordinance could not be collaterally attacked. The authority of the Commissioners of Lewes to make a lease cannot be disputed; the manner of exercising the right can only be attacked in a direct proceeding and not collaterally."
The court below felt bound by the distinction drawn in the Lewes Sand Co. case between lack of jurisdiction to pass an ordinance and an improper exercise of admitted power. Pointing out that the City of Wilmington had full power to pass "the type of ordinance" here involved, the court held that the particular ordinance was merely an improper exercise of the general powers of the City.
This, we think, was a misapplication of the language of the opinion. That language  "improper exercise" of power  is drawn from similar language in the case of Camden v. Mulford, cited in the opinion. It refers primarily to proceedings leading up to the passage of an ordinance, or to irregularities in connection with its passage, as will appear from the Mulford case and from the cases hereinafter cited.
We do not question the soundness of the decision in the Lewes Sand Co. case. But, as the opinion indicates, the rule there announced is not an inflexible one. A recognized exception to it is the case of an ordinance void on its face. The following cases, applying the rule of collateral attack, recognize this exception.
Consumers Gas & Electric Light Co. v. Congress Spring Co., 61 Hun 133, 15 N.Y.S. 624 (attempt to charge fraud in passage of ordinance); England v. City of Knoxville, 183 Tenn. 666, 194 S.W.2d 489 (suit to enjoin city from adopting daylight saving time pursuant to election claimed to be illegal); Chicago Telephone Co. v. Northwestern Telephone Co., 199 Ill. 324, 65 N.E. 329 (attempt to attack ordinance granting franchise by reason of defects in the proceedings attending its passage).
An ordinance void on its face is more than a mere "improper exercise" of admitted power over a general subject; there is no jurisdiction or power to pass it.
In Schaffer v. Federal Trust Co., 132 N.J.Eq. 235, 28 A.2d 75, 77, the defendant was the holder of certain warehouse receipts, the negotiability of which was affected by a regulation of the state liquor control authorities. It attacked the validity of the regulation. The court said:

*703 "Complaint, on the authority of Tucker v. [Board of Chosen] Freeholders of Burlington County, 1 N.J. Eq. 282, and decisions following it, argues that this court cannot inquire into the validity of the regulation. If an ordinance or regulation is merely irregular, it cannot be attacked collaterally; but if it is void, the rule is otherwise. When a party to a cause in this court, or in a law court, claims a title or right founded on an ordinance, or a regulation such as is here in question, the court may determine whether or not the regulation is ultra vires and void and so insufficient to support the asserted title or right."
In this case defendants assert that the ordinance is on its face unconstitutional. If, therefore, the general rule respecting collateral attack be applied, the companies under a recognized exception would at least have the right to claim that the ordinance is void on its face.
But we do not think that the rule forbidding collateral attack governs this case. There is a fundamental reason why it does not apply here. It is indicated in the Schaffer case. If the ordinance is the foundation of the plaintiff's suit, and its effect is to affect directly a defendant's rights, the defendant may attack the validity of the ordinance, under the general rule that one whose rights are directly affected by a statute, ordinance or regulation may raise the question of constitutionality. Davis v. Boston & M. R. Co., 1 Cir., 89 F.2d 368; 16 C.J.S., Constitutional Law, § 76, p. 164. It is a mere matter of nomenclature whether the attack in such a case be termed direct or collateral. It may be said to be collateral in the sense that the municipality is not a party to the case, and that the primary purpose of the suit is not a judgment declaring the ordinance void; but it may also be said to be direct in the sense that the defendant is seeking to protect a right of his own directly threatened by the ordinance. Whatever classification be adopted, the attack is permitted. The immunity of a municipal ordinance from a test of constitutionality can certainly rise no higher than the acts of state legislatures or officials. There are frequent instances of litigation between private parties in which the plaintiff asserts a right founded upon a statute, and in which the defense asserts that the statute is unconstitutional  for example, a suit founded upon a fair trade act. See General Electric Co. v. Klein, Del., 106 A.2d 206.
We therefore think that the question in this case does not turn upon a distinction between direct and collateral attack, but upon a determination of the nature and extent of the insurance companies' interest in the condemnation proceedings by the City against plaintiff's property.
Now, these proceedings directly affected the nature and extent of the companies' liability. They are liable as for a total loss if  but only if  the condemnation was required by law. Otherwise the chain of causation is broken; the condemnation is not the direct result of the fire; and the insurers are liable only for a partial loss. The companies have a direct interest, therefore, affected by the condemnation proceedings. It is so held in New Hampshire Fire Insurance Co. v. Murray, 7 Cir., 105 F.2d 212, 214. The municipal fire ordinance involved in that case prohibited the repair of a wooden building within the fire limits if the building had been damaged to the extent of fifty per cent or more of its value. The ordinance provided for an appraisal committee of three. Without notice to the insurer a committee was appointed to appraise a building damaged by fire. The committee reported that the building had been damaged to the extent of eighty per cent of its value. Learning of the report, the company asked to be heard before the council upon the amount of the damage. This request was not granted and the council accepted the report. The company filed suit to enjoin the enforcement of the demolition order and upon a review of the facts the District Court held that the damage was considerably less than fifty per cent and enjoined the enforcement of the order. On appeal the decree was affirmed. The court, after referring to the insurance in force on the building, said:

*704 "For this reason the plaintiff had an interest in this matter which was materially affected by the abatement order. The law is clear in Wisconsin that the extent of the insurer's liability is determined not by the actual fire loss or by the amount of fire damage found by the common council. In these cases, where the building after a partial fire destruction is ordered destroyed pursuant to a fire ordinance, the insurer's liability is measured by the face value of the policy as for total fire destruction. Sec. 203.21, Stats.Wis., 1937; City of New York Fire Insurance Co. v. Chapman, 7 Cir., 76 F.2d 76. Accordingly, after the order to abate was made, Drefahl made a claim against the plaintiff for $5,000, basing his claim on Section 203.21 supra."
In the case just cited the insurer, informed of the condemnation proceedings, protected its interests by a suit against the municipality. Accordingly, no question of collateral attack was involved, and it may be said that a similar course could have been followed here. But there is nothing in the record to show that the companies had any knowledge of the Building Inspector's order until the amended complaint was filed in April 1952. Whether an insured, in such a case as this, may be prompt notice shift to the companies, as the real parties in interest, the burden of defending a condemnation proceeding, is a question not before us. Cf. New Orleans Real Estate Mortgage & Securities Co. v. Teutonia Insurance Co., 128 La. 45, 54 So. 466.
Under the circumstances here presented, to say that the companies may not question the legality of the condemnation is to say that they may not question it at all, and are bound by the insured's decision not to contest it. This we cannot think is the law.
We are cited to no case denying the right of the insurer to attack the constitutionality of a building ordinance in a suit by the insured, if the insurer's liability is directly increased by the operation of the ordinance. The right has been frequently recognized.
In Security Insurance Co. v. Rosenberg, 227 Ky. 314, 12 S.W.2d 688, 690, the owner claimed a total fire loss by reason of an order of condemnation. Pointing out that the owner could, of course, have questioned the validity of the order, the court said:
"An order of condemnation and abatement, such as was made in this case, is conclusive neither on the property owner nor on his insurer. As we have seen above, the property owner may by an appropriate action question the findings of fact upon which it rested. A fortiori, if the insurer is no party to the proceeding in which the condemnation was had, it too may question the findings of fact upon which the condemnation rests. Its obligation is to indemnify the party insured against loss occasioned by fire. If the loss was not occasioned by the fire, but by an improvident order of condemnation, the insurer is not responsible under its contract, for it did not insure against such loss. If it be no party to the condemnation proceeding, it is not bound by the order, and hence when the question arises it may show that the condemnation was improvidently ordered."
In Lux v. Milwaukee Mechanics' Insurance Co., 322 Mo. 342, 5 S.W.2d 343, 344, a building was condemned under an ordinance conferring "full discretionary powers" upon the officials to declare a public nuisance any structure unsafe from fire. The insurer defended on the ground that the ordinance was unconstitutional. The court so held. The court said that "the act of * * * tearing [the building] down was voluntary, * * * and not binding on defendant."
In Zalk & St. Joseph's Realty Co. v. Stuyvesant Insurance Co., 191 Minn. 60, 253 N.W. 8, the ordinance authorizing condemnation was attacked by the insurer and upheld.
In Firemen's Insurance Co. v. Houle, 96 N.H. 30, 69 A.2d 696, 13 A.L.R.2d 612, a declaratory judgment proceeding was brought by the insurers against the insured to determine their liability for a fire loss. The suit involved the constitutionality and application of the municipal building code. *705 The suit was entertained and the questions were ruled upon by the Supreme Court of New Hampshire.
In A. H. Jacobson Co. v. Commercial Union Assurance Co., Ltd., D.C., 83 F. Supp. 674, 677, the insurer attacked as unconstitutional the ordinance of condemnation and the proceedings thereunder. The court held the ordinance constitutional and also said:
"* * * Defendant cites no authority contrary to the foregoing view but argues that under the circumstances of this case the ordinance must be deemed unconstitutional since no opportunity was afforded defendant to question its validity or the propriety of the action taken thereunder. The answer to this argument is, of course, obvious. Assuming that defendant's interest was such as to give it the right to question the validity of the ordinance or the propriety of the action of the Building Inspector, that right has not been lost or prejudiced. Defendant is presently having its hearing on these questions. Due process does not require more. Cf. Zalk & [St.] Joseph's Realty Co. v. Stuyvesant Ins. Co., supra, 191 Minn. at page 68, 253 N.W. 8."
We are of opinion that the companies have the right, in this proceeding, to challenge the validity of the condemnation proceedings.
Were the condemnation proceedings legal? This question involves, first, the reasonableness of the standard  assessed value  adopted in the ordinance, and second, application of the standard to particular cases.
As to the first question, the companies contend that the ordinance is void on its face, citing Bettey v. City of Sidney, 79 Mont. 314, 257 P. 1007, 56 A.L.R. 872. That case held void a building ordinance forbidding the repair of a wooden building damaged to the extent of thirty-five per cent of its assessed value. The court said that everybody knows that an assessment roll is not a true criterion of value, notwithstanding a statutory requirement that it be assessed at its full cash value. The contrary view was taken in Koeber v. Bedell, 254 App.Div. 584, 585, 3 N.Y.S.2d 108, affirmed 280 N.Y. 692, 21 N.E.2d 200, followed in Navin v. Early, Sup., 56 N.Y.S.2d 346. These cases deal with a zoning ordinance authorizing the Board of Appeals to permit the reconstruction of a building devoted to a non-conforming use if it had been destroyed by fire to the extent of not more than seventy-five per cent of its assessed value. It was held, without discussion, that the ordinance was valid.
There is certainly something to be said for the proposition that assessed value is frequently not the same as real value. But it may and should bear some relation to real value. Section 74 of the Wilmington City Charter provides in part as follows:
"The assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated full value of the property assessed, and so pro rata. All assessments upon real estate shall be so made as to show separately the valuation of ground, the improvements if any, and the total valuation of the property assessed, * * *".
Section 78 of the Charter provides as follows:
"The Board of Assessment shall establish rules by which to value the buildings and improvements, and all buildings and improvements must be valued according to the rules so established, so far as the same may be practicable. If, however, it should appear that the combined assessment on the land and buildings according to the rules above provided for does not represent the true value thereof, then the said Board shall place whatever value on the buildings as may be necessary to make the combined value true and correct."
We do not know how these sections have been construed in practice, nor to what extent they have been followed. But it is *706 clear that the assessed value should bear a real and uniform relation to true value. The statute appears to permit the board to adopt either real value or a fixed percentage of real value as the basis of the assessment. The presumption is that the assessors follow the law. The provisions of the condemnation ordinance are obviously based upon this presumption. We are unwilling to say, as was said in the Sidney case, that assessed value has, as a matter of law, no relation to real value, and that the standard adopted in the ordinance is necessarily unreasonable and arbitrary. Suppose, for example, the assessors had adopted a policy of assessing property at eighty per cent of real value, and that the assessments have from time to time been reviewed and corrected. Such a policy would require condemnation if damage to a wooden building exceeded forty percent of its real value. That result is not unreasonable. An ordinance so providing was held valid in A. H. Jacobson Co. v. Commercial Union Assurance Co., supra. An ordinance of the kind before us may, we think, be based upon assessed value if (1) the assessed value bears a reasonable relation to true value and (2) if the application of the specified percentage of damage to the percentage adopted for assessment purposes does not result in an unreasonably low figure.
The ordinance before us deals with a subject closely touching public health and safety. It is our duty to uphold it if it is possible to construe it to produce a reasonable result. We think that the standard of assessed value adopted in the ordinance is to be construed in the light of the assessment provisions above-quoted. So construed, it is not necessarily unreasonable or arbitrary and is not void on its face.
But it does not follow from this conclusion that every order of condemnation under the ordinance is valid. The Building Inspector is required (in effect) to condemn a fire-damaged building in every case in which the damage exceeds fifty per cent of the assessed value. He has no discretion about the matter. As in the case at bar, the assessment, notwithstanding the requirements of the Charter, may be so far below real value that condemnation would deny to the property owner the right to make minor repairs  a right that cannot constitutionally be forbidden. 7 McQuillen, Municipal Corporations, (3d Ed.), § 24.486.
In cases in which the assessed value departs from the statute, how is the ordinance to be applied, and by what rule is the validity of the order of condemnation to be determined? Must the order be held void because the property, as here, is grossly underassessed? Or may the ratio of the specified percentage (50%) to the percentage fixed by the Board under Sections 74 and 78 of the Charter be applied to the real value to furnish a test of the legality of the order?
These questions naturally suggest themselves as a result of our refusal to hold the ordinance void on its face. But we are not willing to attempt to answer them without further assistance from counsel. Both parties have briefed and argued the matter as though it were solely a question to be decided upon a reading of the ordinance. We do not think so.
We shall, therefore, postpone the issuance of any mandate upon this opinion and shall set down the case for reargument upon the following questions:
Was the condemnation order valid in the light of the facts of this case?
In particular:
(a) May Section 45 of Chapter 25 be construed as establishing a ratio between damage and true value, dependent upon the standard of assessment fixed by the Board of Assessment under Sections 74 and 78? And if so, may that ratio be applied to true value to determine the reasonableness of any condemnation order, irrespective of the amount of the assessment?
(b) If the answer to (a) is No, what result follows?
The cause is set down for reargument at the September session. In filing briefs the parties will be governed by the provisions of Rule 8 of this Court, the time to begin to run as of the date of filing this opinion.