## TIPS et al. v. UNITED STATES.
### No. 6881.

Circuit Court of Appeals, Fifth Circuit.
April 26, 1934.

A. M. Waugh, P. Harvey, and A. F. Sundermeyer, all of Houston, Tex., for appellants.

Douglas W. McGregor, Asst. U. S. Atty., of Houston, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

A jury trial having been waived by stipulation, the United States recovered judgment for $4,208.58 against J. C. Tips, Jr., and T. L. Smith, Jr., as rental from April 15, 1927, to May 1, 1930, of 3,101 square feet of floor space in a large warehouse owned by the United States at Little Rock Air Intermediate Depot. The facts shown without dispute are that the defendants as partners bought of the United States about 1,600 crated aeroplane engines, and in April, 1925, obtained from the Secretary of War a so-called lease for one year of floor space on which to store them in the above-named warehouse. In July, 1925, a corporation was formed with defendants and their respective wives as the stockholders, to which the property was sold, and the partnership between Tips and Smith was dissolved. Tips as president and manager attended to the business of the corporation. On April 26, 1926, the Secretary of War signed another lease, which so far as material reads: "This lease made between the Secretary of War of the first part and Tips

& Smith, a partnership composed of J. C. Tips, Jr., and T. L. Smith, Jr., of the second part, witnesseth: That the Secretary of War, by virtue of the authority conferred on him by Act of Congress approved July 28, 1892 (27 Stats. 321 [40 USCA § 303]), entitled: 'An Act Authorizing the Secretary of War to Lease Public Property in Certain Cases', and in consideration of the payment of the monthly rental of $103.37 in advance on the first day of each and every month during the period of this lease, hereby leases to the party of the second part hereinafter designated as the lessee for the period of one year commencing April 15, 1926, but subject to revocation at will by the Secretary of War, the following described property at the Little Rock Air Intermediate Depot, Little Rock, Arkansas, to be used for the storage of material recently purchased from the United States, 3101 square feet of floorspace to be designated by the Commanding Officer of said depot. * * * The use and occupation of the property occupied by this lease shall be subject to such rules and regulations as the Commanding Officer or other competent military authority may from time to time prescribe." This paper on May 7, 1926, was also signed "Tips & Smith, By J. C. Tips, Jr." He signed thus to escape a new negotiation in behalf of the corporation. Smith never saw the lease and did not know it was signed as by the partnership instead of by the corporation until sued. The agreed sums were all paid by the corporation through checks signed by it up to April 15, 1927. The local representatives of the United States knew that Tips & Smith had been succeeded by the corporation. The airport was then in process of abandonment, the engines were obsolete and not salable, and they were left in the warehouse, the United States rendering no bills for rent and none being paid. The building in 1930 passed into other hands, and the new proprietors finally sold the engines for their storage charges.

█ At the conclusion of the evidence, each side moved the court generally for judgment in its favor. The motions were not ruled on otherwise than by giving judgment for plaintiff, whereupon defendants excepted. Such a motion in such circumstances naturally means that the movant contends that under the law the evidence requires a judgment favorable to him. In this circuit no greater elaborateness is necessary. Jefferson Standard Life Ins. Co. v. Stevenson (C. C. A.) 70 F.(2d) 72. The exception was taken in time because the motion was not overruled until the judgment was pronounced. Both court and opposing counsel were apprised thereby that the overruling of the motion was not acquiesced in but was to be noted as error, and at the time the error might still have been corrected. This is the purpose of requiring an exception. Harbour v. United States (C. C. A.) 54 F.(2d) 1. We will pass upon the exception and the assignments based upon it.

█ The engines left in the warehouse from April, 1927, to May, 1930, did not belong to Tips & Smith, but to the corporation. It and not they would naturally be liable for a reasonable charge for storage of the property or for the use and occupancy of the premises. In order to render these individual defendants liable, recourse is had to the doctrine of holding over by tenants with the resulting renewal from year to year of the lease at the option of the landlord. These individuals were bound for the first year ending April 15, 1926. Smith would not be bound by Tips' unauthorized signing of the dissolved firm's name to the second lease ending April 15, 1927, unless the doctrine of holding over after the former lease supports the signing. Without so deciding, we will consider the case as though both were bound. All the payments promised in the second lease were made. After its expiration on April 15, 1927, neither Tips & Smith nor the corporation nor the United States did anything touching the matter for three years. It is argued that, if there was a tenancy and no surrender of possession to the landlord, the landlord could look to the tenants for rent as on an annual renewal of the lease, although a subtenant was in actual occupancy; the latter not having been accepted as tenant by the landlord. See 16 R. C. L. Landlord & Tenant, §§ 684, 685; 35 C. J. Landlord & Tenant, §§ 167, 295, 306. It is replied that there was no lease, but only a license, because the authority of the Secretary of War under 40 USCA § 303, extends only to the making of a license and because the paper by its provisions is nothing more. We do not inquire into the authority of the Secretary of War, nor whether the doctrine of renewal by holding over is applicable to public leases (see City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763), because we are of opinion that no relation of landlord and tenant purports to be established or in fact existed. A tenancy involves an interest in the land passed to the tenant and a possession exclusive even of the landlord except as the lease permits his entry, and saving always the landlord's right to enter to demand rent or to make repairs. A mere permission to use

land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given, is but a license. 35 C. J. Landlord & Tenant, § 10. Many cases are collected in White v. Maynard, 111 Mass. 250, 15 Am. Rep. 28. And to constitute a lease or a tenancy there ought always to be a definite, certain place demised or rented. 16 R. C. L., Landlord & Tenant, § 32. Thus in Selby v. Greaves, L. R. 3 C. P. 594, where the contract was to rent half the room called No. 7 in the third story of the factory on Station street in the town of Nottingham, with heat and power to drive lace machines, there was held to be a tenancy which would sustain a distraint for rent, it appearing that the space was partitioned off, the court saying: "The letting was not a mere letting of an onstand for the lace machines, but a letting of a defined portion of the room separated from the remaining portion, with exclusive possession by the person taking it, and that possession was taken under that demise." On the contrary, in Hancock v. Austin, 14 C. B. (N. S.) 634, where there was no demise of a room nor a partitioned portion of one, but the lacemaker had three machines running in a room with others, a contrary conclusion was reached; the court saying there was "no demise of the room, but only a bargain for the standing of the plaintiff's machines." In Cluett v. Sheppard, 131 Ill. 636, 23 N. E. 589, there was a lease of a story of a designated building, and this further provision: "Tenant to have the privilege of storing a reasonable number of cases in the basement." This provision was held no lease of a described part of the basement, but a mere license to store there. In Bowley v. Fuller, 121 Me. 22, 115 A. 466, 24 A. L. R. 964, the defendant had his hay in a barn of the plaintiff. It was held that there was no tenancy of the barn, no ownership of it pro hac vice in the defendant, but a mere license, and that the principles of a landlord and tenant relation had no application. We so hold in this case. While the instrument calls itself a lease, it is in substance a permission subject to revocation at will by the Secretary of War to use solely for the storage of specified articles 3,101 square feet of space in a large building, to be designated by the commanding officer and subject to such regulations as he or other competent military authority may from time to time prescribe. No specified part of the floor was then or afterward permanently assigned, much less partitioned off, so that exclusive possession of it might be taken and maintained. The uncontradicted evidence is that the figure 3,101 square feet was the space which by estimate the crates, if stacked four high, would actually occupy, that they were stacked in different parts of the warehouse, and that from time to time, when the commanding officer needed that space, they were moved elsewhere to suit his convenience. The engines were simply protected from the elements in the government's warehouse. The dominion and control of the whole building remained in the commanding officer. There was storage rather than tenancy contracted for and afforded. The defendants here are not liable for the storage of the corporation's property beyond the period that they agreed to be.

The judgment is reversed, with direction to enter one in favor of the defendants.