LEWES SAND COMPANY, a corporation of the State of Delaware, Defendant Below, Plaintiff in Error, *v.* HENRY G. GRAVES and LEWIS B. GRAVES, Plaintiffs Below, Defendants in Error.

(*June* 20, 1939.)

HARRINGTON, Chancellor, LAYTON, C. J., RICHARDS, RODNEY and TERRY, J. J., sitting.

*James M. Tunnell, Sr.,* and *James M. Tunnell, Jr.,* for plaintiff in error.

*Daniel J. Layton, Jr.,* for defendants in error.

Supreme Court, No. 6, June Term, 1938.

RODNEY, J., delivering the opinion of the Court:

We may consider the first two assignments of error as one. Both have a tendency to attack the validity of the lease from the Commissioners of Lewes to Henry G. Graves and Lewis B. Graves, the plaintiffs below, defendants in error. The Lewes Sand Company strongly relies upon the language of the Legislative Act vesting the lands in the Commissioners of Lewes, whereby the Commissioners were authorized to lease the lands "to persons who will improve or agree to improve the same." The plaintiff in error contends the lease was *ultra vires* on the part of the Commissioners and attempted to show the lack of improvements by the lessee. The lessee contended that improvements within the meaning of the Statute had been made, and that there had been no showing that no agreement to improve was in existence. The lessee also contended that, in any event, no error existed in the action of the Court below because the entire contention constitutes a collateral attack upon the municipal action, which can not be allowed. We shall not pause to consider the testimony as to the nature of improvements or whether they were made, or as to effect of the presence or absence of any agreement to make improvements. The municipal authorities were given quite extensive authority to lease the lands for the benefit of the

Town of Lewes. The Town Commissioners did by ordinance and by a formal instrument of writing lease the lands to the plaintiffs below. We do not think the circumstances of this case bring the matter within any exception to the general rule that a municipal ordinance is not subject to collateral attack. Public policy forbids that legislative acts or municipal ordinances should be attacked collaterally. 2 *McQuillin Mun. Corp.*, (2d Ed.) *Sec.* 844, *p.* 869; *Sawyer v. Robison,* 114 *Tex.* 437, 268 *S. W.* 151; *Chicago Tel. Co. v. N. W. Tel. Co.*, 199 *Ill.* 324, 65 *N. E.* 329, at page 335.

In *Treasurer of City of Camden v. Mulford,* 26 *N. J. L.* 49, the Court drew the clear distinction between the lack of jurisdiction of municipal authorities to pass an ordinance on the one hand and on the other hand the admitted power to pass the ordinance, but the improper manner of exercising the right. In the latter case it was *held* that the ordinance could not be collaterally attacked. The authority of the Commissioners of Lewes to make a lease can not be disputed; the manner of exercising the right can only be attacked in a direct proceeding and not collaterally.

The third Error assigned, viz., that "the Court erred in not granting the motion of the defendant below for non-suit as requested by it at the conclusion of the testimony in chief offered by the plaintiffs below" must be denied. In *May v. Curry and Davis,* 4 *Harr.* 265, it was determined that a writ of error will not lie to the judgment of a Court granting or refusing a non-suit. See, also, *Truxton v. Fait & Slagle Co.,* 1 *Penn.* 483, at page 510, 42 *A.* 431, at page 438, 73 *Am. St. Rep.* 81.

By the Fourth assignment of error the plaintiff in error contends that the Court below erred in not granting a directed verdict for the defendant below, as requested by it at the conclusion of the testimony.

While it may or may not be strictly appropriate

we propose to briefly consider under this assignment certain reasons which were advanced in argument under the motion for a non-suit, but which do not seem to have been renewed under the motion for binding instructions. In support of the motion for a non-suit the defendant below contended that the lease to the Graves Brothers was a "mining lease" merely and, as such, would not sustain an action of trespass. The Court below *held* otherwise and we think it was correct. While it may not be denied that the removal of sand was the chief object of the lease, yet the agreement between the parties was not a mere license to that effect. The agreement was a formal instrument described as a lease, by which the lessor vested in the lessee a definite property described by metes and bounds; the lease was for a definite term, reserving a fixed amount per ton for sand removed, with a guaranty of a minimum annual payment. The lessors expressly grant to the lessees "quiet and peaceful enjoyment of the premises herein demised during the continuation of the lease." "A lease is a contract by which one person divests himself of, and another takes the possession of lands * * * for a term, whether long or short." *Woods, Land. and Ten.* 203: "A lease, at the common law, is a grant or assurance of a present or future interest for life or for years or at will in lands or other property of a demisable nature, a reversion being left in the party from whom the grant proceeds." 1 *Platt, Leases* 9.

The mere fact that the consideration of the lease or rental is partly based upon the quantity of sand removed does not make the agreement a mere license and operate as a sale of the sand in place but is as said in *Nelson v. Republic Iron & Steel Co.,* (8 *Cir.*) 240 *F.* 285, 290, "the compensation which the occupier pays the landlord [or lessor] for that species of occupation which the contract * * * allows."

In *Heywood v. Fulmer,* 158 *Ind.* 658, 32 *N. E.* 574, 18

*L. R. A.* 491, an agreement for the removal of sand was *held* to be a lease. In the cited report in 18 *L. R. A.* 491, is a note containing many cases showing the distinction between leases of the land and mere licenses. The same principle has often been applied to the removal of ores and quarrying of stone or marble. See cases cited in *State v. Royal Mineral Association,* 132 *Minn.* 232, 156 *N. W.* 128, *Ann. Cas.* 1918 *A.* 145.

In the instant case the instrument was a lease in form; we think it a lease in fact.

The Fifth assignment of error was that the Court "erred in striking out the testimony referred to by the Court as follows on *Page* 232 of the *Record*

" 'I will strike out all testimony relative to the description of the Sand Hill by metes and bounds and also the testimony to the effect that the Sand Hill referred to in the lease of 1917 and the renewal in 1937 extends into or upon the land of the plaintiffs.' "

This assignment is based upon the following circumstances:

At the trial the defendant below, Lewes Sand Company, introduced in evidence the lease from the Commissioners of Lewes to William C. Lofland, dated March 7, 1917, the assignment of said lease to the Lewes Sand Company, dated March 20, 1924, and the renewal of said lease dated February 15, 1937. By these instruments the Lewes Sand Company became entitled to a small tract of 21050 square feet of land adjoining a railroad siding, together with a thirty foot right of way from the railroad to the "Sand Hill" and "the privilege or right to use, sell, ship or deliver sand from the Sand Hill." The defendant below also introduced parol testimony having a tendency to show the location and extent of the "Sand Hill" and that it extended to or upon the land of the plaintiffs. The leases and the testimony were stricken from the record by the Court below. This action

was based upon the theory that a lease must contain a sufficiently accurate description so that the property demised may be identified either from the inherent description or by proper reference to something else which can be identified.

The Court below evidently felt that the term "Sand Hill" was entirely indefinite and that while parol evidence is admissible to identify the land described, yet it is not admissible to complete and perfect a description on its face insufficient and incapable of application. For this principle much authority could be cited. 25 *R. C. L.*, *p.* 221, *Sec.* 19; 3 *Jones on Ev.* (*2d Ed.*), *Sec.* 470, *p.* 2669; *Allen v. Kitchen,* 16 *Idaho* 133, 100 *P.* 1052, *L. R. A.* 1917 *A,* 563, 18 *Ann. Cas.* 914. Most of the authorities, however, arise in *Specific Performance cases,* cases involving the *Statute of Frauds,* or otherwise directly involving the written instrument containing the description. In the case at bar the defendant below held a lease for a small piece of land with "the privilege or right to use, ship or deliver sand from the Sand Hill." Whether or not it was necessary that a more definite description be attached to this privilege or right it seems unnecessary to determine. The lease for the small tract with the privilege or right to dig sand on the "Sand Hill" was provided by ordinance and lease from the Commissioners of Lewes to the defendant below. The Commissioners of Lewes are not parties to this action and the validity of either the ordinance or lease is not directly involved in the proceedings below. We think the validity of the action of the municipal authorities can not be collaterally attacked as indicated in our treatment of the first two assignments of error.

While we think the Court erred in striking out the leases and testimony we do not think that such action constituted prejudicial error. The leases and testimony are

all included in the *Record* before us and to that *Record* we now look for the disposition of the remaining assignments of error.

██ As we view the matter, based upon the various leases and testimony, it is resolved to a simple proposition. The defendant below, or its predecessors, since March 7, 1917, have held a lease for a small tract of land with the right of way to the Sand Hill and the "privilege or right to use, sell, ship or deliver sand from the Sand Hill." This was not exclusive right (*Lewes Sand Co. v. Commissioners of Lewes*, 22 *Del. Ch.* —, 191 *A.* 821). Subsequently, on October 30, 1936, the Commissioners of Lewes leased to the plaintiffs below the two tracts aggregating forty-one acres, together with the right to dig sand thereon. The Sand Hill is described on the *Record* as a large hill variously estimated from a mile to two and a half miles in length.

██ In the absence of any showing that the grant of the lease to the plaintiffs below was an unreasonable curtailment of the privilege or license to dig sand on the Sand Hill theretofore granted to the predecessor of the defendant below, we see nothing to invalidate the subsequent lease.

Assuming that the Court below had not stricken from the *Record* the leases of the defendant and the evidence of the Sand Hill, we see no defense offered to the action and no question of fact which could have been submitted to the jury, and, therefore, dismiss the sixth assignment of error.

Perceiving no error in the record or proceedings, the judgment of the Court below is affirmed.

LAYTON, C. J., concurring:

I am in agreement with the conclusions of the majority of the Court save in one particular. I think the learned trial Judge committed no error in striking out all testimony relative to the description of the sand hill by metes and

bounds made by the surveyor, and the testimony that the sand hill, referred to in the Lofland lease of 1917 and the renewal thereof in 1937, extended into and upon the lands leased to the plaintiffs below. The lands in question, belonging to the State with a certain jurisdiction over them vested by statute in the municipality of Lewes, contain large deposits of sand in the form of hills or dunes. The extent of the particular dune was, from the evidence, uncertain. The surveyor, who testified on behalf of the defendant below, said that it was approximately one mile in length. An officer of the defendant corporation testified that it was from two to two and one half miles long. The surveyor's testimony and the description of the dune prepared by him was based upon his conception of the natural object, a conception materially different from that of the other witnesses. The witnesses were testifying on the same side. It may be assumed that they honestly differed. The foundation of the rule allowing extrinsic evidence for the purpose of identification where a descriptive word or expression is used, is based upon the maxim *"Id certum est quod certum reddi potest."* The phraseology, of doubtful meaning without explanation, must contain in itself, with the explanation, an identification of the land. Here, the very foundation, to which the explanation was intended to refer, was uncertain. The effect of the testimony was not to identify a known natural object, but to supply a description of something not in itself, fixed and certain.