Koch, J.
This is an action brought to obtain a declaratory judgment. The plaintiff corporation operates coin-metered washing machines in the basement of an apartment building owned by the defendant corporation. Pursuant to provision in *470 the agreement between the parties, defendant elected to cancel the said agreement and has notified the plaintiff to remove its machines from the building. Plaintiff maintains that it is entitled to protection under the Commercial Bent Law (L. 1945, ch. 3, as amd.), or the Business Bent Law (L. 1945, ch. 314, as amd.). Plaintiff seeks a declaratory judgment, declaring that the parties are, respectively, landlord and tenant, as those terms are defined in the said emergency rent laws. Plaintiff also asks that defendant be enjoined, for the duration of the effective period of whichever of said statutes is applicable, and of any extension thereof, from taking any steps to evict plaintiff and its machines from the defendant’s premises. The defendant maintains that the plaintiff is not to be deemed a tenant under the emergency rent laws and asserts that even if the court reaches the conclusion that plaintiff is such a tenant, the defendant may not be enjoined from ousting the plaintiff and its equipment from the defendant’s premises.
The first question for the consideration of the court is the construction of the agreement entered into by the parties and claimed by plaintiff to constitute a lease. The first section of the contract sets forth that the defendant, desiring to supply its tenants of the premises with modern efficient laundry facilities, ‘ hereby leases * * * all of that certain real estate * * * consisting of that certain laundry space in the building * * * 1975-1979 Walton Avenue, Bronx, N. Y. for the purpose of installing, maintaining and servicing a special washing, drying and laundry equipment system therein for the term of three years ”. This section of the contract also provides that the agreement may be cancelled by either party upon thirty days’ written notice. In section 2, the plaintiff undertakes to service the laundry equipment and keep the same in repair at its own expense during the life of the agreement, and also to pay to the defendant 10% of the gross income from the equipment. In section 3 the defendant agrees to permit the plaintiff, through its authorized representatives, free and unobstructed access to, and egress from, the installation during reasonable hours of the day for the purpose of further installations, inspection, servicing and removal of coins from the equipment. These are the pertinent provisions of the agreement made by the parties. Is this agreement a lease, or is it a license?
“ The relation of landlord and tenant involves in every case the existence of an estate in the tenant, whether for a shorter or a longer term, by virtue of which he is owner of the land during the term. A tenant for one year, ten years, or one thousand years is the owner of the land during his term, entitled *471 to its exclusive possession and control just as truly as a tenant for life or a tenant in fee. * * * A tenant has something more than a mere privilege or license; he has ownership, exclusive and as against all the world including his landlord, and if this be absent in any disputed case the relationship of landlord and tenant does not exist.” (Emphasis supplied.) (Walsh on Law of Property [2d ed.], § 148.)
“ A license is a mere privilege or permission given by the owner of land authorizing another to enter and to use or occupy the land or part of it for any special purpose ”. (Walsh on Law of Property [2d ed.], § 150.)
The main object of the agreement is to procure for the tenants of defendant a laundering service. The plaintiff agrees to furnish the service. The plaintiff, through its installations, is granted a license or privilege to occupy the land for the purpose of performing its contract of furnishing this laundry service to the tenants. The plaintiff has no ownership of the space allotted to its equipment in the sense that usually obtains in the relationship of landlord and tenant. In a lease the tenant is the owner of the premises for the term therein specified. The rent is the purchase price for outright ownership for the duration of the term. In the instant matter, all that is granted by the terms of the contract, properly read, is a license to use the designated space for the installation and maintenance of the machines. If the occupation of the land is in connection with a service to be rendered to the landlord, then the possessipn. continues to be that of the landlord. (Kerrains v. People, 60 N. Y. 221, 225.)
In Hess v. Roberts (124 App. Div. 328, 330-331) it was held that an agreement giving the exclusive privilege of conducting a stenographic office in a hotel does not constitute a lease. ‘ ‘ The cases which have restrained a landlord from interfering with a tenant’s possession of real property have no application, for here there was no property leased to the plaintiff, but an agreement to allow her to carry on the business of stenography and typewriting in the hotel ”.
In Tips v. United States (70 F. 2d 525-527): “A tenancy involves an interest in the land passed to the tenant and a possession exclusive even of the landlord except as the lease permits his entry, and saving always the landlord’s right to enter to demand rent or to make repairs. A mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given, is but a license. * * * And to constitute a lease or a tenancy there *472 ought always to be a definite, certain place demised or rented. * * * Thus in Selby v. Greaves, L. R. 3 C. P. 594, where the contract was to rent half the room called No. 7 in the third story of the factory on Station street in the town of Nottingham, with heat and power to drive lace machines, there was held to be a tenancy which would sustain a distraint for rent, it appearing that the space was partitioned off, the court saying: ‘ The letting was not a mere letting of an onstand for the lace machines, but a letting of a defined portion of the room separated from the remaining portion, with exclusive possession by the person taking it, and that possession was taken under that demise.’ ”
In accordance with the foregoing reasoning and in the light of the authorities cited, the court arrives at the conclusion that the agreement in the matter before it is not a lease, but a license.
Next to be considered is the applicability of the Commercial Bent Law. Under the provisions of this act (§2, subd. [h]) a landlord is defined as ‘ An owner, lessor, sublessor, receiver, trustee, executor, assignee or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any part of any commercial space ”.
In the same section, subdivision (i), a tenant is defined as a ‘ lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any commercial space ”. The licensee contemplated by the statute is one who is “ entitled to the possession or to the use or occupancy of the whole or a part of any commercial space ”. Under the contract herein the plaintiff did not have exclusive possession in the sense necessary to constitute a tenancy as opposed to a mere license or privilege. The allowance of space for the machines is but a part of the over-all license granted to plaintiff for the purpose of rendering service to the landlord and his tenants, and the space allotted is not “ commercial space ” in the purview of the law. So, too, any consideration paid is to be construed as compensation for the license to maintain the washing machines. It seems perfectly apparent that the intention of the emergency rent control law is to protect possession of space and not to protect a license to do certain acts on real property.
Plaintiff argues that if for any reason it should be held that the space in question does not constitute “ commercial space ”, the only other alternative is that such space is “ business space ” under the Business Bent Law. (§2.) “ Commercial space ” under the Commercial Bent Law (§2, subd. [a]) is defined as *473 any space used or occupied for commercial purposes in any city other than space used or occupied as a store or office. “ Commercial purposes ” is defined in subdivision (b) of section 2 as “ The manufacture, sale, resale, processing, reprocessing, displaying, storing, handling, garaging or distribution of personal property ’ ’. It is apparent that the activities and privileges allowed to the plaintiff in the agreement herein do not fit into the picture of ' ‘ commercial purposes ’ ’ delineated by the act.
But, is the space in dispute “ business space ” under the applicable provisions of the Business Bent Law? Subdivision (a) of section 2 defines business space as follows: “ All rental space in any city other than: (1) commercial space as defined in chapter three of the laws of nineteen hundred forty-five, or any act amendatory thereof; (2) dwelling space and meeting-rooms in hotels, and dwelling space in rooming houses, apartment houses, dwelling and other housing accommodations; (3) piers, docks and wharf properties; and (4) places of public assembly ”, Section 51 of the Business Bent Law contains a declaration of public emergency. That emergency is declared to exist in connection with “ Unjust, unreasonable and oppressive leases and agreements for the payment of rent for office space and retail stores and other "business space ”. (Emphasis supplied.) Giving to the language of the statute its ordinary meaning, it is clear that “ office space ”, “ retail stores ” and “ other business space ” mean business space as comprehended in the relationship of landlord and tenant. As heretofore demonstrated, that relationship does not exist here.
Before concluding, reference should be made to the ease of United Merchants’ Realty & Improvement Co. v. New York Hippodrome (133 App. Div. 582, affd. 201 N. Y. 601). In that case plaintiff agreed to “let” and defendant agreed to take “ ‘ all of the roof on the premises known as No. 1313 Broadway, * * * for a term of two years, * * * said roof and space above it to be used solely for the purpose of erecting thereon a bulletin board for displaying advertising of a lawful nature ’ ” (p. 583). The court there said (pp. 584-585): “ The fact that the parties used the words ‘ let ’ and ‘ landlord ’ is not conclusive. * * * There was no specific property leased, but what seems to have been intended was a right to use the roof to erect upon it an advertising sign. * * * It is quite clear that the defendant was not given exclusive possession of the premises at any time ”. In the instant matter the plaintiff had no exclusive possession of either ‘ business space” or “ commercial space ”. Plaintiff corporation had a license merely.
*474 The purpose of the Commercial and Business Bent Laws was the protection of those engaged in business against what might very well be their losing their means of livelihood — the place in which they conducted in their business — or, at least, being compelled to pay such an amount in rent as would make it impossible to profitably conduct their business. The facts here present no such situation. The plaintiff is engaged in providing a service for the defendant in relation to the operation of the defendant’s real estate. This service he can render to any other owner of real estate who desires such service. The very contract between the parties recognizes that either party may be dissatisfied with the arrangement as shown by the provision in the contract that it may be cancelled by either party upon thirty days’ written notice. Certainly an owner of real estate should not be deprived of the opportunity to make what he considers a desirable change in the service in the operation of his real estate because of a strained construction of the provisions of emergency legislation.
Judgment for defendant. Settle findings and judgment.