Henry G. Graves,
Plaintiff,

and

Marion C. Graves, Claire G. Connaway, Elizabeth G. Hanna,
Lewis G. Graves, Jr., and Alfred G. Graves,
Intervening Plaintiffs,

*vs.*

Commissioners of Lewes, a municipality of the State of Delaware
in Sussex County,
Defendant,

and

Lewes Sand Company,
Intervening Defendant.

*Sussex—September 22, 1958.*

*Daniel J. Layton* and *Daniel J. Layton, Jr.,* Georgetown, for plaintiff.

*Donald W. Booker,* Wilmington, for intervening plaintiffs.

*Samuel R. Russell,* Wilmington, for defendant.

*James M. Tunnell, Jr.,* Wilmington, for intervening defendant.

MARVEL, Vice Chancellor: Plaintiff seeks an order requiring the Commissioners of Lewes to renew a certain agreement dated October 20, 1936, pursuant to a provision thereof granting plaintiff and his brother [1] " * * * the privilege of renewal for a further period of twenty

---

1. By agreement dated January 1, 1946, Lewis B. Graves, now deceased, an original party to the agreement here sued upon and a brother of Henry G. Graves, withdrew as a partner in the Graves sand operation known as Delaware Sand Company, retaining an interest in the business which Lewis agreed to carry on and perpetuate under the agreement with the Commissioners. The heirs of Lewis B. Graves were allowed to intervene as plaintiffs in this case, contending that the case is moot on the grounds that no order was required to bring about an extension of the October 20, 1936, agreement, however, this contention fails to get at the basic issue, which is that of the validity or invalidity of the original agreement. Intervening plaintiffs' rights, if any, under the Graves lease are not a matter presently at issue in this case.

years * * *" on the giving of notice of such intention 90 days before the expiration of the original term. The October 20, 1936, agreement purported to grant the plaintiff and his brother a 20 year "* * * privilege of removing an unlimited number of tons of sand * * *" from a designated area of 41 acres in that portion of the common lands of Lewes known as the Sand Hill, provided other terms of the agreement such as non-interference with others authorized to excavate and sell sand from other portions of the common lands were observed, and stipulated that the Graves were to guarantee the Commissioners a fixed annual rental of $50 plus five cents per ton for each ton of sand removed from the demised premises "* * * during the existence of this agreement." The complaint alleges that although plaintiff duly gave notice of his intention to renew for a second term of 20 years pursuant to a provision of the original agreement, renewal was improperly refused. Lewes Sand Company, having been permitted to intervene as a defendant, the answer of such defendant and the answer and counterclaim of the Commissioners set forth various defenses attacking the validity and operation of the Graves lease. The Commissioners also contend that in any event it is under no obligation to renew the Graves lease because the Lewes Sand Company has a senior and superior right to remove sand from the Sand Hill area. Plaintiff having moved for summary judgment, defendants responded with similar motions, which motions are now before the Court for decision.

The essentials of the dispute between the principal litigants are a matter of record in earlier proceedings in several of the courts of Delaware, and many of the facts here material have been discussed in opinions of Chancellor Wolcott,[2] of Judge Rodney,[3] speaking for the Supreme Court of the State, and of Judge Leahy [4] in a federal condemnation case involving the area in question. Briefly the facts are as follows: The Sand Company's privilege of removing sand from that part of common beach lands of Lewes known as the Sand Hill, finds its source in a so-called Lofland lease of March 1917 and in a Jones lease of September 1921 while the Graves claim is based on the later agree-

2. *Lewes Sand Co. v. Commissioners of Lewes*, 22 *Del.Ch.* 21, 191 *A.* 821.

3. *Lewes Sand Co. v. Graves*, 1 *Terry* 189, 8 *A.2d* 21.

4. *United States v. 1010.8 Acres, D.C.Del.*, 56 *F.Supp.* 120.

ment of October 1936. Upon the granting of sand removal right to plaintiff and his brother, Lewes Sand Company brought suit in this Court against the Commissioners of Lewes and the Graves brothers for injunctive relief against the granting and exercise of such competing privilege, the complaint being based on the theory that Lewes Sand Company's prior right to remove sand from the public lands in question was thereby threatened. In ruling on plaintiff's motion for a preliminary injunction, the Chancellor assuming but not deciding that an exclusive right under the circumstances could be lawfully granted, decided that in any event Lewes Sand Company on the basis of the operative agreement between the Commissioners and plaintiff had failed to carry the burden of establishing that its rights to remove sand from the common lands were an exclusive and superior character and denied plaintiff's motion for a preliminary injunction.

A few months later, the Graves brothers brought an action at law in trespass against Lewes Sand Company, contending that such corporation's operations had invaded the specific area of 41 acres demised in their lease. The jury having returned a verdict for plaintiffs allowing nominal damages, the Sand Company sought a writ of error. In affirming the judgment below, the Supreme Court first noted that by act of the Legislature (§ 7, Chap. 220, Vol. 24, Laws of Delaware) [5] the public and vacant lands located within and contiguous to the corporate limits of the town of Lewes had been vested in the Commissioners of the town with "jurisdiction over the same * * *" [1 *Terry* 189, 8 *A.2d* 22] including authority "* * * to lease, to persons who will improve or agree to improve the same, such portions of said public lands for such time and upon such terms as they, the said Commissioners, may deem proper for the interest and benefit of said town * * *." The Court pointed out that the right of Lewes Sand Company to excavate sand found its source in the Lofland lease under the terms of which a small area of 21,050 square feet was actually demised and the further privilege or right granted "* * * to use, sell, ship or deliver sand from the Sand Hill * * *." The Graves

5. §§ 7 and 8 of Chap. 220, Vol. 24, Laws of Delaware, referred to in this opinion appear in *haec verba* in Chap. 170 of Vol. 43 Laws of Delaware, the most recent act reincorporating the Town of Lewes.

brothers having acquired their rights in 1936 in a much larger tract of 41 acres, the issue before the Court on appeal was whether or not the Sand Company had committed actionable trespass on the Graves' close, and issue decided in favor of the plaintiffs.

The Court in considering two of the assignments of error, namely that the trial court had erred in admitting the Graves' lease into evidence over the objection that it was ultra vires and that the court had also erred in refusing to allow the Sand Company to attack the Graves' agreement by showing that the Graves had not only not agreed to improve the lands in question but had in fact made no improvements as contemplated in § 7, *Chap.* 220 of *Vol.* 24, Laws of Delaware, stated:

"(1) We may consider the first two assignments of error as one. Both have a tendency to attack the validity of the lease from the Commissioners of Lewes to Henry G. Graves and Lewis B. Graves, the plaintiffs below, defendants in error. The Lewes Sand Company strongly relies upon the language of the Legislative Act vesting the lands in the Commissioners of Lewes, whereby the Commissioners were authorized to lease the lands 'to persons who will improve or agree to improve the same.' The plaintiff in error contends the lease was ultra vires on the part of the Commissioners and attempted to show the lack of improvements by the lessee. The lessee contended that improvements within the meaning of the Statute had been made, and that there had been no showing that no agreement to improve was in existence. The lessee also contended that, in any event, no error existed in the action of the Court below because the entire contention constitutes a collateral attack upon the municipal action, which cannot be allowed. We shall not pause to consider the testimony as to the nature of improvements of whether they were made, or as to effect of the presence or absence of any agreement to make improvements. The municipal authorities were given quite extensive authority to lease the lands for the benefit of the Town of Lewes. The Town Commissioners did by ordinance and by a formal instrument of writing lease the lands to the plain-

tiffs below. We do not think the circumstances of this case bring the matter within any exception to the general rule that a municipal ordinance is not subject to collateral attack. Public policy forbids that legislative acts or municipal ordinances should be attacked collaterally. 2 *McQuillin Mun. Corp.* (2d Ed.) Sec. 844, p. 869; *Sawyer v. Robinson,* 114 *Tex.* 437, 268 *S.W.* 151; *Chicago Tel. Co. v. Northwestern Tel. Co.,* 199 *Ill.* 324, 65 *N.E.* 329, at page 335.

"In *Treasurer of City of Camden v. Mulford,* 26 *N.J.L.* 49, Court drew the clear distinction between the lack of jurisdiction of municipal authorities to pass an ordinance on the one hand and on the other hand the admitted power to pass the ordinance, but the improper manner of exercising the right. In the latter case it was held that the ordinance could not be collaterally attacked. The authority of the Commissioners of Lewes to make a lease cannot be disputed; the manner of exercising the right can only be attacked in a direct proceeding and not collaterally."

Against this background of unsuccessful litigation, the defendants make a number of contentions which they submit require this Court to regard the Graves lease in a different light than that in which it was considered in earlier litigation. They first argue that one of the premises of the Supreme Court's ruling was that there had been no showing in that case that the privilege granted to the Graves was "* * * an unreasonable curtailment of the privilege or license to dig sand on the Sand Hill" granted to the Sand Company's predecessor in title. They point out that during the intervening years as a result of the condemnation of substantial commond lands by the United States and continuing excavation in the area, the available sand outside of the Graves close has been reduced to the vanishing point. The Sand Company argues that such events have drastically curtailed its prior rights, but unless there are other factors which make it inequitable to have the Graves lease extended, changes caused by the exigencies of national defense and depletion over the years can have no effect in themselves on the parties' contractual rights and obligations. Compare *Cunningham v. Esso Standard Oil Co.,* 35 *Del.Ch.* 371, 118 *A.2d* 611.

■ It is next contended by the Commissioners (a contention in which the Sand Company somewhat inconsistently joins) that the Graves lease is invalid because it purported to give the Graves brothers a virtual monopoly to dig sand within their close and that such purported grant was ultra vires and vulnerable to direct as opposed to collateral attack. This basic attack on the Graves lease centers on the statutory language of § 7, *Chap.* 220 of 24 Laws of Delaware and of § 8 of the same chapter. Section 7, which has been alluded to earlier, admittedly is concerned with leasing and contemplates improvements by the tenants. Section 8 on the other hand is concerned with the selling of marsh grass and hay at public sale as well as the sale of wood and timber. By amendment provisions for the sale of sand and gravel were later added to such section. Defendants contend that the excavating and removal of sand on the demised premises in the words of the Graves lease "* * * to a point no lower than six feet above mean high water * * *" cannot be deemed an improvement, and that the road and other facilities installed by plaintiff and his brother in connection with their business were primarily for their own convenience despite the grant to the Commissioners of the right to use the road for the removal of sand for its own corporate purposes. They conclude therefore that the Graves' privileges must necessarily be found in Section 8, and that accordingly their purportedly unrestricted right to dig sand within their close, in the absence of a clear legislative mandate, constitutes an' invalid exclusive franchise, *McQuillin's Municipal Corporations,* 3d *Ed., Vol.* 10, § 29.93, and *Detroit Citizens' Street R. Co. v. Detroit Railway,* 171 *U.S.* 48, 18 *S.Ct.* 732, 43 *L.Ed.* 67. This argument is strenuously advanced despite the results of prior litigation and plaintiff's firm reliance on the principles of res adjudicata and estoppel and that of judicial non-interference with the non-fraudulent discretionary dealings of a municipality with its proprietarily owned or controlled property.

In *Lewes Sand Company v. Commissioners, supra,* there was no direct attack on the validity of the Graves lease per se, plaintiff there having taken the position that its rights to remove sand under a broader type of lease were exclusive. Significantly, the Commissioners did not there question its authority to lease specific common

lands to sand excavators. Moreover, the Court specifically pointed out that the operative agreement between the Sand Company and the Commissioners executed in 1929 did not "* * * extend to all the public lands. The premises were narrowed by appropriate description. The term was for twenty-five years. The right was not conferred as an exclusive one * * *" and the Chancellor also stated in that case that the rights acquired by the Sand Company from the Lofland estate were likewise not exclusive. These views of the Chancellor as to the non-exclusive nature of rights broader in most respects than those here involved in my opinion destroy the force of defendants' attack on the Graves lease on the grounds of monopoly, and I find no merit in defendants' contention that an invalid exclusive franchise or grant is held by plaintiff.

Admittedly the Graves' bargain with the Commissioners does not fall precisely within the terms of either § 7 or § 8 of *Chap.* 220 of *Vol.* 24, Laws of Delaware, however, at the time it was entered into the common beach lands held by the Commissioners of Lewes consisted of a large dune area perhaps two miles and more in length. Neither the Lofland lease, the 1937 agreement between the Commissioners and the Sand Company nor the Graves lease purported to grant exclusive rights of the type involved in *Detroit Citizens' Street R. Co. v. Detroit Railway, supra,* and *Weekes v. City of Galveston,* 21 *Tex.Civ.App.* 102, 51 *S.W.* 544, and while intervening events have placed the Commissioners and Lewes Sand Company in a position in which they now find the Graves' rights restrictive, I decline to strike down as a monopolistic ultra vires grant an agreement which did not confer an exclusive franchise when entered into merely because such intervening events have drastically reduced the vast areas of sand which formerly existed on the common lands in Lewes. Significantly, persons having an interest in such parts of the area as were taken over by the United States lands were compensated pro tanto in the condemnation case.

In the case of *Lewes Sand Company v. Commissioners of Lewes, supra,* admittedly a different cause of action involving a different alignment of parties, the Commissioners as a defendant did not ques-

tion its authority to enter into either the Sand Company or the Graves lease, apparently taking the position that the rights it had granted to private citizens to remove sand from the common land were non-exclusive and accordingly non-monopolistic, and on the present record I am unable to find any factual or legal basis for concluding that a grant which was not exclusive in 1937 has become so because of intervening events over which the parties had no control. I conclude that the Graves lease is not ultra vires on such basis.

■ The Commissioners further contend that over the years it has improperly delegated its fiduciary duties in connection with the common lands of Lewes, at least insofar as the Graves lease is concerned, and that such abdication from duties placed on it by the Legislature "* * * to sell sand and gravel by measure or otherwise * * *" is a breach of trust vulnerable to its own direct attack inasmuch as the Lewes common lands are held on a species of charitable use or trust, *United States v.* 1010.8 *Acres, supra.* It is argued that to permit the Graves to continue to deal as they see fit with the sand within their close to the possible financial injury of the inhabitants of Lewes and of Sussex County would constitute a violation of the principle, *delegatus non potest delegare,* Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 434.

Assuming such contention to have a sound basis in law particularly where a trust relationship exists, in my opinion such a change of position on the part of the Commissioners may not equitably be made at this late date. Such defense was not raised in the Chancery suit brought by the Sand Company and is at odds with the substance of the various leases referred to in this and earlier litigation between the principal litigants in this case. I conclude that the Commissioners are estopped to question their proprietary actions of over twenty years ago taken under legislative fiat which in the words [6] of Judge Rodney gave them "* * * quite extensive authority to lease the lands for the benefit of the Town of Lewes". It may not now question an established course of conduct in its dealings with plaintiff based on its

6. See also the Court's conclusion in that case. "In the instant case the instrument was a lease in form; we think it a lease in fact."

jurisdiction over the so-called vested lands, Antieau, *Municipal Corporation Law,* Vol. 1, pp. 544-545 and Annotation, *Estoppel—Governmental Bodies,* 1 *A.L.R.2d* 338, at page 353 et seq.

Were it not entirely clear that a municipality may be estopped to question its proprietary dealings with the public, an additional basis for rejecting the Commissioners' contentions is found in the conclusions reached in United States v. 1010.8 Acres, *supra,* by the Special Master appointed to determine title to that part of the common lands taken by the Government. In discussing Sections 7 and 8, as presently incorporated in the charter of Lewes, the Special Master used language which sensibly breaks down the apparent conflict between these sections. He stated:

> "The reason for the existence in the charter of two separate provisions for jurisdiction over the lands contiguous to or near the Town does not appear in the record, nor is it discussed in the briefs. The two provisions appear to be over-lapping. It would seem, however, from the latter provision above quoted that the authority of the Commissioners to sell sand and gravel might depend upon the validity of the provision relating to the 'vested lands'; and accordingly the validity of certain of the leases here involved (e. g., Exs. 5 and 6) might be doubted if such provision be void for unintelligibility or vagueness."

He went on to decide that the provision relating to the "vested lands" (§ 7, Chap. 220 of Vol. 24, Laws of Delaware), was not void for uncertainty, and in accepting and affirming the Master's report on this phase of the case the District Judge upheld the validity of the Lewes Sand Company leases, which give, as has been noted, broader rights than the one here attacked by defendants.

■ In view of these conclusions as to the validity of the Graves lease, I deny the motion of the Commissioners of Lewes and of Lewes Sand Company for summary judgment. Accordingly, plaintiff is entitled to a decree of specific performance extending his lease provided he complies with paragraph 9 of the original agreement which guar-

antees on renewal for each ton of sand removed a price during the extended term equal to "* * * the highest guarantee and net ton sale price then being paid by other companies or concerns interested in removing and selling sand from the Sand Hill at that time."

On the present record, however, there is a genuine issue of material fact as to such price. Accordingly, plaintiff's motion for summary judgment granting specific performance is denied subject to the rulings made in this opinion leaving open for decision plaintiff's right to a renewal of agreement after testimony and documents relevant to paragraph 9 of the October 20, 1936, agreement have been made a part of the record.

Order on notice.