In the Matter of the Application of PENNY HILL CORPORATION, a corporation of the State of Delaware, for license by store to sell alcoholic liquor not for consumption on the premises where sold, located at 405 Philadelphia Pike, Wilmington, New Castle County, Delaware.

(*October* 28, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Joseph T. Walsh* (of the firm of Logan, Marvel, Boggs and Theisen) for applicant, appellant.

*Clarence W. Taylor* (of the firm of Hastings, Taylor and Willard) for protestants, appellees.

Supreme Court of the State of Delaware, No. 22, 1959.

BRAMHALL, J.:

The questions raised by this appeal relate to the alleged interest of the Chairman of the Delaware Liquor Commission (Commission) by reason of the ownership by him and his wife, as tenants by the entireties, of a one-half interest in the premises leased to the applicant for a liquor license.

The following are the pertinent facts:

In November of 1956, the Penny Hill Corporation, a Delaware corporation, of which its president, Eugene L. Connor, was and is the sole owner of all of the stock of said corporation, made application to the Commission for a license to sell alcoholic beverages not for consumption on the premises at 405 Philadelphia Pike, Wilmington. These premises are a part of a shopping district owned by the Chairman of the Commission, John M. Conway, and his wife, and Michael A. Poppiti and his wife. The owners of the property leased the premises to Connor's corporation for a period of five years, with the usual provision for renewal from year to year in the absence of a notice to vacate. The rental was $150 per month. The lease was signed by

Connor on behalf of the corporation and also by Connor as agent for the owners.

A petition in opposition to the granting of the application was filed with the Commission, signed by two hundred twenty-five residents of the area which would supposedly be served under the license. A petition in favor of the granting of the license signed by a considerably lesser number of residents of the area was also presented. Immediately prior to the beginning of the hearing upon said application, the Chairman stated publicly that he was one of the owners of the premises in question but that he had "nothing to do with the license whatsoever". Following this statement the Chairman disqualified himself from participating in the hearing or in the deliberations of the Commission. The Commission granted the application for license, the Chairman signing its report. Protestants appealed to the Superior Court. That court, upon examination of the record, reversed the finding of the Commission upon the ground that the Chairman of the Commission as a co-owner and co-lessor of the premises involved had an indirect interest, as defined by the statute, in the granting of the license. That court held that because of such interest the Commission was without authority to issue a license to applicant. Since this determination by the Superior Court was dispositive of the case, that court did not pass upon the other questions presented. Applicant has appealed to this court.

The determination of this appeal involves an interpretation of the pertinent statute. This statute (Title 4, *Del. C.* §§ 307 and 308) provides as follows:

"§ 307. (a) Neither the Commissioner nor any employee of the Commission may, directly or indirectly, individually or as a member of a partnership, or of any other association, or as the holder or owner of more than ten per cent of the capital stock of a corporation, have any interest whatsoever in the sale or in the manufacture of alcoholic liquors, or in any enterprise or industry in which alcoholic liquors are required.

"(b) Neither the Commissioner nor any employee of the Commission shall receive any commission or profit whatsoever from, or have any interest whatsoever in, the purchases or sales made by the Commission or by the persons authorized by virtue of this title to purchase or to sell alcoholic liquors, but no provision of this section shall prevent any Commissioner or employee from purchasing and keeping in his possession, for the personal use of himself, the members of his family, and his guests, any alcoholic liquor which may be permitted to be purchased or kept by any individual by virtue of this title and no provision of this title shall prevent any Commissioner or employee from owning a minority interest in a corporation engaged in the manufacture and sale of denatured alcohol for industrial or other non-beverage purposes."

"§ 308. When notified of appointment as Commissioner, the individual so notified shall furnish in duplicate and in writing to the Governor a statement of every interest, direct or indirect, and however small, held or owned by him as a member or as a stockholder in any partnership, corporation or other association engaged in the sale or in the manufacture of alcoholic liquors or in any undertaking, industry or business in which alcoholic liquors are used or required. One copy of the statement shall be inserted in the permanent records of the Commission open to public inspection."

Most of the provisions of these sections were originally incorporated in Section 7 of the original act creating the Commission.

Two questions are presented: (1) Did the Chairman of the Commission as a co-owner of the premises involved have such interest in the license as would be forbidden by the statute?; (2) If so, did the action of the Chairman in disqualifying himself from taking any part in the hearing or in the deliberations of the Commission correct or cure any injury which might have been sustained by protestants or the public?

Protestants say that the business of selling alcoholic beverages has not been cloaked with the traditional freedom which

has favored most enterprises, but, on the contrary, has long been the subject of special regulation throughout this country; that under the provisions of Article 13 of the Constitution of this state, *Del. C. Ann.*, the Legislature has been vested with wide power to prohibit or control the sale of alcoholic beverages; that in recent years the Legislature has provided for licensing the sale of alcoholic beverages by creating a Commission with discretion, within certain well-defined limits, to grant or deny the privilege of selling alcoholic beverages; that under the statute and also the public policy existing in this state members and employees of the Commission are foreclosed from enjoying the benefits of the license; that this restriction applies to any interest whatsoever, including that of owner of the premises for which the license is granted; that the fact that the member of the Commission in this instance disqualified himself from participating in the hearing and in the deliberations of the Commission did not cure the violation of the statute.

Applicant contends that the ownership of the premises under a written lease for a definite amount of rent, in the absence of any acceleration clause or a clause giving the owner a participation in the profits, is not such an interest as would be prohibited by the Act or by the public policy of this state. Furthermore, applicant says that the action of the Chairman in disqualifying himself from any participation in the hearing or in the deliberations of the Commission constituted an effective insulation from the proceedings and thereby prevented the protestants and the public from being prejudiced.

Protestants' argument is bottomed upon the interpretation which they allege should be given to the words "directly or indirectly", as found in sub-paragraph (a), and the words "any interest whatsoever", as found in sub-paragraph (b) in Section 307. They contend that this language should be interpreted as encompassing the interest which the Chairman has in the property in question as one of the owners and lessors of the premises.

 To determine the significance of these clauses as they appear in this statute, we must look into the purpose and intention of the Legislature and ascertain its meaning from an examination of every section of the statute which in any way deals with the question raised. *State v. Rose*, 3 *W. W. Harr.* 168, 132 *A.* 864, 45 *A. L. R.* 85. They must be given a reasonable and sensible meaning, having in mind such intent and purpose. *Petition of Hoopes*, 1 *Terry* 120, 5 *A.* 2d 653.

Considering these sections as a whole it becomes apparent that there are a number of exceptions and limitations to the general prohibition of a member or employee of the Commission from having any interest in the sale or manufacture of alcoholic beverages. (1) Section 307 (a) permits a Commissioner to have an interest not greater than ten per cent in the capital stock of a corporation having an interest in the sale or manufacture of alcoholic beverages. (2) Section 307 (b) prohibits them from receiving any commission or profit or having any interest whatsoever in the purchases or sales made by the Commission or person authorized to purchase or sell. (3) They are permitted to own a minority interest in a corporation engaged in the manufacture and sale of denatured alcohol. (4) Section 308 provides that when appointed a Commissioner he shall furnish to the Governor a statement of every interest owned or held by him as a member of any partnership or a stockholder in any corporation or association engaged in the sale or manufacture of alcoholic liquors.

It will be observed that in all of these instances the provisions cited deal with the *sale* or *manufacture* of alcoholic beverages. Section 308 expressly relates to the sale and manufacture of alcoholic beverages. A reference to the original Act is also illuminating. Sections 307 and 308, in somewhat different language, originally constituted Section 7 of Chapter 18, 38 *Del. Laws* 91. Section 3 of this Act is the section on definitions of descriptive words as used in later sections. These words are in quotations. Thus the word "sell" is defined as follows:

"Sell means: solicit or receive an order for; keep or expose for sale; deliver for value or in any other way than purely gratuitously; peddle; keep with intent to sell; keep or transport in contravention of any section or provision of this title; traffic in; or for any valuable consideration, promised or obtained, directly or indirectly, or under any pretext or by any means whatsoever; procure or allow to be proceured for any other person;" (4 *Del. C.* § 101)

The word "sale" is defined as the act of selling. In the following sections, including Section 7, when these words are used, they are again set off in quotations. Obviously, it is intended that they be given the meaning as defined in Section 3. In this case, following the above reasoning, in referring to the word "sale" in this section a company engaged in actual selling of alcoholic liquors would be indicated. So it is with the word "manufacture". They would not include any interest not actually engaged therein.

We interpret the words "directly or indirectly" and "any interest whatsoever" as referring to the manner in which that interest is held. Such an interest, we think, would not include that of owner and lessor under a lease such as exists in this case. Of course, it is conceivable that there could be a lease in which a landlord would have such a control over the business as to have an interest therein. But that is not true here. In this case the landlord has reserved no control; there is no acceleration clause; there is no clause providing for any participation in the profits. In the absence, therefore, of any default on the part of the tenant, the landlord's interest would be purely a reversionary one. *Lewes Sand Co. v. Graves,* 1 *Terry* 189, 8 *A.* 2d 21. Under these circumstances, we conclude that the landlord's interest in this case is not such an interest as was contemplated by the Legislature in the statute.

We should like at this point to state that we think that the action of the Chairman of the Commission in disqualifying him-

self when technically there was no legal objection to his participating in the hearing was, nevertheless, appropriate and proper. His action demonstrated clearly any lack of intention on his part to take advantage of his position to influence the action of other members of the Commission.

■ Since we have decided that the ownership of the premises, does not, of itself, constitute such an interest as is prohibited by Section 307, it is unnecessary that we decide the second question presented.

The judgment of the Superior Court will be reversed and that court directed to consider and determine the other questions raised at the trial below which were not passed upon by that court in its opinion.