ERNEST A. TIMMONS,
Plaintiff,

*vs.*

EDWARD CROPPER,
*Defendant.*

*Sussex, July 13, 1961.*

*Robert D. Thompson, Jr.,* Georgetown, for plaintiff.

*John E. Messick,* of Tunnell & Raysor, Georgetown, for defendant.

SHORT, Vice Chancellor: On April 14, 1959 plaintiff and defendant entered into the following written agreement:

"Location Agreement"

"This Agreement, made and concluded this 14 day of April, 1959, by and between Ernest A. Timmons of Delmar, Delaware, hereinafter referred to as Timmons and Cropper's of Selbyville, Delaware, hereinafter referred to as Proprietor, Witnesseth:

"In consideration of the payment to proprietor by Timmons of the sum of One Dollar it is agreed:

"Proprietor leases unto Timmons appropriate space for the operation of automatic Amusement equipment upon premises located Church & Main St. Proprietor also agrees to furnish electric outlets therefor and to permit operation of such equipment during usual business hours and under usual conditions without hindrance.

"It is agreed that the following equipment is to be installed:

"All Pin Ball Machines on 50-50 basis.

"All licenses to paid for out machines.

Proprietor grants unto Timmons the exclusive right to operate automatic Amusement machines upon the premises during the full term hereof, and no other person, persons, or corporations shall have the right to operate the same during the full term hereof, including the Proprietor, nor shall any other commercial Amusement system be operated on said premises during said term.

"Title to all equipment placed by the undersigned, shall at all times be and remain the equipment of Timmons and Proprietor agrees that Timmons may remove the same at anytime during the term hereof.

"In the event of any breach of this agreement by the Proprietor, Timmons shall have the right to enjoin the Proprietor from operating any other equipment in the said premises by an

appropriate action in Equity, the Proprietor agreeing that jurisdiction might vest in Equity without his objection and as a cumulative right, it is further agreed that as liquidated damages and not as a penalty, upon such breach, Timmons shall be entitled to and shall, at time of breach, receive from Proprietor a sum equal to the average weekly share of Timmons prior to the said breach, multiplied by the number of weeks remaining in the unexpired term of the agreement. These rights shall be cumulative.

"It is agreed that this agreement shall continue for a period of 1 year from the date hereof and thereafter for an additional period of one year and so on from year to year until written notice of termination be received no less than sixty days prior to the end of any term hereof.

"This agreement shall be binding not only on the parties hereto, but also on their heirs, executors, administrators, successors and assigns and in the event the Proprietor sells his interest in the said premises, that such successor shall be fully bound by the term of this leasehold agreement.

"This contains all the agreements of the parties, there being no other reservations or understandings.

"Parties certify authority to enter into this agreement.

<div style="margin-left:3em;">

"Ernest A. Timmons       L. S.
_____
  (Ernest A. Timmons)

Edward Cropper       L. S.
_____
Proprietor
Selbyville, Del.
_____
  Address"

</div>

Plaintiff now seeks an injunction to restrain defendant from placing, or permitting to be placed on defendant's premises any pin ball machines other than plaintiff's, a mandatory injunction to compel defendant to remove or cause to be removed from the premises any

pin ball machines not owned by plaintiff, and liquidated damages in accordance with the agreement.

On its own motion the Court has raised the question of jurisdiction to hear and determine the cause upon the ground that plaintiff may have an adequate remedy at law.

Plaintiff contends that the relationship created by the agreement is that of landlord and tenant and that the Court should therefore invoke the rule that equity will intervene by injunctive process to restrain the lessor from breach of a covenant binding him not to use or lease other premises which he owns for purposes stipulated in the lease. See 32 *Am.Jur.* 155. Defendant argues that the agreement creates nothing more than a license in the plaintiff since it neither defines any particular location on defendant's premises for the placing of plaintiff's machines, nor gives to plaintiff exclusive possession of any particular space.

"A lease is a contract by which one person divests himself of, and another takes the possession of lands * * * for a term, whether long or short." *Woods on Landlord and Tenant,* 203, cited with approval by Judge Rodney in *Lewes Sand Co. v. Graves,* 1 *Terry* 189, 8 *A.2d* 21. A license with respect to real property is "a privilege to go on the premises for a certain purpose, as, for example, the purpose specified in the instrument creating the license; it does not operate to confer on, or vest in, the licensee any title, interest, or estate in such property." 53 *C.J.S. Licenses* § 84, *p.* 810 "[T]he principal test for determining whether the relationship created is that of landlord and tenant rather than that of licensor and licensee is whether the contract confers exclusive possession of the premises as against all the world, including the owner, and a mere permission to use land, dominion over it remaining in the owner and no interest in, or exclusive possession of, it being given, is but a license." 51 *C.J.S. Landlord and Tenant* § 6, *p.* 513.

In *Wandell v. Ross,* 241 *Mo.App.* 1189, 245 *S.W.2d* 689, 691, the instrument involved was styled "Store Lease", contained technical words of demise, provided for payment of "rent", and recited that "said Lessor hereby leases to said Lessee the hat checking space

to the front and left of front entrance doors, the premises located at 600 East 6th Street, Kansas City, Missouri, to be used for the purpose of hat checking service." The Court, observing that no exclusive possession was conferred by the agreement, that the space described was indefinite and was solely for the purpose of carrying on the concession, and that plaintiffs had only limited access to the building, held that the contract created a mere license. Similarly, in *Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp.*, 191 *Misc.* 884, 82 *N.Y.S.2d* 572, an agreement purporting to "lease" certain laundry space to plaintiff, which was engaged in the business of installing, maintaining and servicing automatic coin-metered washing machines, was held to confer only a license. To the same effect is *Kaypar Corp. v. Fosterport Realty Corp.*, 1 *Misc.2d* 469, 69 *N.Y.S.2d* 313, *affirmed* 272 *App.Div.* 878, 72 *N.Y.S.2d* 405; *Tips v. United States*, 5 *Cir.*, 70 *F.2d* 525, 527 where the Court said that "to constitute a lease * * * there ought always to be a definite, certain place demised or rented."

The agreement here does not delineate any identifiable space to which it is to apply. Neither does it pretend to grant to plaintiff exclusive possession even of "appropriate space." There is nothing in the writing itself which pretends to designate it as a lease, except for the phrase "Proprietor leases unto Timmons appropriate space." Even where an instrument is denominated as a lease and contains technical words of demise it is not to be construed as such if, in fact, it is something else. *Whiteside v. Oasis Club*, 162 *Mo.App.* 502, 142 *S.W.* 752; *Reynolds v. Van Beuren*, 155 *N.Y.* 120, 49 *N.E.* 763, 42 *L.R.A.* 129; *Tips v. United States, supra.*

The present agreement establishes the licensor-licensee relationship and plaintiff may not invoke the rule upon which he relies.

Plaintiff says that if an injunction is not ordered he will suffer irreparable damage for the reason that he cannot be adequately compensated at law. The same argument was advanced in the similar case of *Unit Vending Corporation v. Los*, 71 *Pa.Dist. & Co.R.* 606. There the parties entered into an agreement by the terms of which plaintiff was given the exclusive right to install and sell cigarettes

through a cigarette vending machine in defendant's restaurant for a term of two years. Within a few months defendant discontinued the use of plaintiff's machine and substituted therefor a similar machine of another company. Plaintiff sued for a restraining order and for loss of profits. It was held that since plaintiff's damages were readily ascertainable at law the Court could not interfere by injunction. The Court said: "It appears to us that plaintiff's machine in the case before us, having been in defendant's place of business for a substantial period during which the measure of profits was ascertained, as to which testimony appears in the record, there is present a reasonable basis for ascertaining the loss of profits for the entire period of the contract, by reason of defendant's breach." While it does not here appear that the measure of profits to plaintiff "was ascertained," it is certainly true that plaintiff's machine was in defendant's place of business for a substantial period, and it is to be reasonably assumed that plaintiff, from his records of the "take" of the machine, can present a reasonable basis for ascertaining his loss of profits for the period of the contract. The agreement itself sets forth such a measure as "liquidated damages." Plaintiff argues that the provision for liquidated damages is but cumulative to the expressed right to equitable relief and would not be available to him in an action at law. Whether or not this follows it is not necessary to decide, for it is clear that plaintiff, upon establishing a breach by defendant in a law action, would be entitled to recover his lost profits. *Unit Vending Corporation v. Los, supra.* Injunctions were also denied in *Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp., supra; Kaypar Corp. v. Fosterport Realty Corp., supra.*

Plaintiff cites *Silverstein v. Abco Vending Service,* 37 N.J.Super. 439, 117 *A.2d* 527, 533, as authority for the proposition that an injunction may properly issue in a case such as this. That action was against fifty defendants who had granted plaintiffs exclusive rights to sell cigarettes in their places of business and a competing vending machine company which was aware of plaintiff's contracts and wrongfully induced breaches thereof. While the Court affirmed the action of the lower Court in granting injunctions against some of the individual defendants, it is quite apparent from a reading of

the Court's opinion that the primary concern was the admitted activity of the competing company in unjustifiably inducing numerous breaches of plaintiffs' contracts. In all probability, the injunctions against the individual defendants were permitted to stand in order to make more effective the relief granted against the competing operator. The overall effect of that operator's activities, if permitted, was to destroy plaintiffs' business. No such situation appears here. Moreover, it is significant that the appellate court modified the injunction "so as to eliminate therefrom all restraints" against defendants whom plaintiffs had sued at law. The unusual circumstances involved in the *Silverstein* case were sufficient to warrant the action there taken. But the case is not to be regarded as authority for the Court, in the circumstances here presented, to entertain jurisdiction in this case.

Plaintiff points out that the agreement provides that upon a breach thereof "by the Proprietor, Timmons shall have the right to enjoin the Proprietor from operating any other equipment in the said premises by an appropriate action in Equity, the Proprietor agreeing that jurisdiction might vest in Equity without his objection and as a cumulative right." It is a cardinal principle of the law that jurisdiction of a court over the subject matter cannot be conferred by consent or agreement. 21 *C.J.S. Courts* § 85, *p.* 127; *Omnium DeParticipations Industries De Luxe (S. A.) v. Spoturno, 9 W.W. Harr.* 100, 196 *A.* 194. Jurisdiction of the subject matter here is lacking by reason of the adequacy of plaintiff's legal remedy.

The prayer for a temporary injunction will be denied, the restraining order heretofore issued in this case on May 2, 1961 is hereby revoked, and the complaint is dismissed.

Order on notice.