

# The Attorney General of Texas

December 10, 1981

/HITE
General

:ourt Building
12548
. 78711
01
874-1367
512/475-0266

St., Suite 1400
. 75201
44

:ta Ave., Suite 160
X. 79905
84

:a . .., Suite 202
TX. 77002
66

way, Suite 312
TX. 79401
:38

:nth, Suite B
TX. 78501
:47

Plaza, Suite 400
nio, TX. 78205
191

Opportunity/
'a Action Employer

Honorable Ray Farabee, Chairman
State Affairs Committee of the
 Texas Senate
State Archives Building, Room 411
Austin, Texas   78711

Opinion No. MW-407

Re:      Characterization   of
"right-to-use"       timesharing
plans in resort communities

Dear Senator Farabee:

You advise us that a concept known as "timesharing" has been used in connection with resort properties. You ask us several questions in connection with the timesharing plan known as the "right-to-use" timeshare. In your letter, you define a "right-to-use" timeshare as follows:

> 'Right-to-use' timeshare, also known as 'timeshare license,' offers the consumer a certain season (high, swing, or low) during which he may reserve his interval week or weeks. The purchaser is not tied to any definite week prior to reservation, and will probably have a different unit of a particular type each year. No title to property is conveyed and no investment represented. The purchaser is prepaying for the right to use an accomodation. The reservation is handled like a hotel reservation in that no particular room or unit is dedicated to the purchaser until he checks in. The reservation clerk makes sure that a certain type of unit will be available for the purchaser during his reserved week. When the purchaser checks in, he is assigned to a condominium unit. The resort supplies maid service, heat, air, water, linens, and conducts the usual check-in and check-out procedures. Guests have the right to use all of the available resort amenities, such as pool, tennis courts, golf course, marina, stables, etc., at the posted prices.

> The objective of 'timesharing' has been to provide the consumer with the exclusive right to

use and occupy a structure during a particular
time of year.

You have not attached any particular timesharing contract to your
request for our interpretation. Your request indicates that there may
be various other types of timesharing plans; however, since these are
not "right-to-use" plans, we will not consider them. No statement in
the definition was made as to the duration of the "right-to-use", but
it will be assumed that it is of limited duration and therefore can
not constitute some form of life estate. Your statement as to the
objective of a timesharing program as providing a consumer with the
exclusive right to use and occupy a structure does not apply to this
particular type of timesharing program as you have defined it. Since
no consumer can claim an exclusive right to use any particular piece
of property, condominium or apartment, the consumer cannot be said to
have exclusive right to occupy a particular structure. The consumer's
right under such a timesharing program is a contractual right for a
license to enter into the real property owned by the resort company.
The resort makes the decision as to which unit the consumer can
occupy.

You ask the following questions:

    1.   Is a right-to-use timeshare an interest
in real property?

    2.   Is a right-to-use timeshare a 'service'
as used in the Consumer Credit Code?

Since, by definition, a "right-to-use" timesharing plan does not
convey title to property, a consumer would not obtain an undivided
interest in the property subject to the "right-to-use" plan. The
question remains, therefore, whether the consumer has purchased a
license to use the property or a lease in the property. Whether or
not two parties intend to enter into a lease agreement or some other
agreement is determined by the contract between them. Byrd v.
Feilding, 238 S.W.2d 614, 616 (Tex. Civ. App. - Amarillo 1951, no
writ). Many "right-to-use" timesharing plans have specific provisions
in the contract stating that no interest in real property of any
nature is being conveyed by the owner to the contracting consumer.
This, in and of itself, could be dispositive of the issue as to
whether or not a particular right-to-use timesharing contract conveys
an interest in real property.

If there is no specific provision in the timesharing contract
regarding whether an interest in property is conveyed by the contract,
the courts would look to the facts of each case to determine whether
or not the consumer had entered into a contract to purchase a license
or a lease. The first and perhaps most important test to determine

whether or not the contract is for a lease of real property is the extent to which the consumer obtains exclusive possession of the property. Brown v. Johnson, 12 S.W.2d 543, 545 (Tex. 1929). The second test to determine the existence of a lease or a tenancy is that there must "be a definite, certain place demised or rented." Tips v. United States, 70 F.2d 525, 527 (5th Cir. 1934). The facts presented in your request show that the consumer does not have the exclusive possession of the premises for which he contracted. The owner remains in possession and control of the property, provides all the cleaning services for the property, and has the right to determine which room or unit is to be used by the consumer. The consumer cannot expect any definite, certain space to be allotted to him. Under a similar set of facts in the Byrd v. Feilding case, the court held that the owner retained sufficient control over the premises so that a license was created in the contract between the owner and the purchaser and not a landlord-tenant relationship. We note that the comptroller has considered such resort property as a hotel subject to hotel occupancy tax under article 23.02, Taxation-General. Our conclusion is that the "right-to-use" timesharing plan does not create an interest in real property.

You have also asked whether or not a right to use timeshare is a "service" as used in the Texas Consumer Credit Code. See V.T.C.S. arts. 5069-6.01, et. seq. The Consumer Credit Code provides that:

> (b)    'Services' means work, labor, or services of any kind when purchased primarily for personal, family or household use and not for commercial business use....

V.T.C.S. art. 5069-6.01(b).

As described in your request, a consumer purchases extensive work and labor in addition to the license to use the owner's property. The owner provides work and labor to clean and maintain the condominium and to maintain and operate the various recreational facilities that are made available to the consumer under the program. In addition, the consumer purchases the managerial work necessary to organize the timesharing schedules. Under the plan, therefore, the consumer purchases both the license to enter the property and the labor required to maintain and manage its facilities. Regarding the license, in Riverside National Bank v. Lewis, 603 S.W.2d 169, 175 (Tex. 1980), the Texas Supreme Court ruled that seeking to require the use of money, and, implicitly, the offering of money for use, was not a "service" under the Texas Deceptive Trade Practices Act. The court emphasized that services includes an activity on behalf of one party by another. Although the definition of "services" under the Deceptive Trade Practices Act is broader than under the Consumer Credit Code, the central focus of the court's definition would still apply to the

Consumer Credit Code: a "service" requires some form of activity on the part of the party providing the services. Therefore, the sale of a mere "license" to use land would not be a "service" under the Consumer Credit Code.

Nonetheless, the right purchased under a "right-to-use" timesharing plan is a combination of a service and a non-service. The purchase of the mere license would be worth very little if the services were not also included in the purchase. In fact, the services are an integral part of the consumer's purchase. Consequently, it is almost impossible to distinguish, in practical terms, the service from the non-service. A court would in all probability find that the entire "right-to-use" timesharing plan should be characterized as a "service" under the Consumer Credit Code.

### S U M M A R Y

A "right-to-use" timeshare is not an interest in real property, but it is a service within the Texas Consumer Credit Code.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Richard Symonds
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger
Richard Symonds